**COMMONWEALTH of Pennsylvania, Appellee**

**v.**

**Barry Eli WILLIAMS, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 21, 2011.
Filed Dec. 23, 2011.

Sandra A. Kozlowski, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney, Sandra Preuhs, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: GANTMAN, LAZARUS, and STRASSBURGER*, JJ.

OPINION BY GANTMAN, J.:

Appellant, Barry Eli Williams, appeals from the order entered in the Allegheny County Court of Common Pleas, which denied his motion for collateral relief/DNA testing pursuant to Section 9543.1 of the Post Conviction Relief Act ("PCRA").[1] We affirm.

The relevant facts and procedural history of this case are as follows. On February 19, 1999, two men entered Elizabeth Pharmacy in Pittsburgh, PA, armed with a knife and handgun. The man wielding the knife used a bandana to cover his face; the gunman wore a hat/wig. The men demanded money. A standoff ensued when a pharmacy employee drew a gun, and John Mariano (a retired Pittsburgh police officer) entered the store. The gunman grabbed a store customer and pointed the gun at his neck. After refusing Officer Mariano's requests to surrender his weapon, the gunman shot the customer, dropped the gun, and fled the store. Witnesses saw the man exit the store and drop an object, later identified as the hat/wig, in a nearby playground. An investigation into the robbery produced Appellant as a potential suspect.[2] Police inter-

---

* Retired Senior Judge assigned to the Superior Court.

1. 42 Pa.C.S.A. §§ 9541–9546

2. The owner of the gun used in the robbery told police Appellant and his codefendant, Terrance Farris, had admitted taking the gun and committing the robbery. In addition,

viewed Appellant, who initially denied any knowledge of the robbery. Appellant soon admitted his involvement but claimed he shot the customer by accident.

The Commonwealth charged Appellant with robbery, aggravated assault, and criminal conspiracy. In addition to the testimony of three eyewitnesses from the pharmacy, the Commonwealth presented evidence that hairs recovered from the hat/wig were consistent with hair samples taken from Appellant. At the conclusion of the trial, the jury found Appellant guilty of all charges. On October 24, 2000, the court sentenced Appellant to twenty one (21) to fifty six (56) years' imprisonment. This Court affirmed the judgment of sentence on November 26, 2001; our Supreme Court denied allowance of appeal on March 27, 2002. *See Commonwealth v. Williams, B.*, 792 A.2d 620 (Pa.Super.2001), *appeal denied*, 568 Pa. 700, 796 A.2d 982 (2002). Appellant filed his first PCRA petition on March 26, 2003. Ultimately, the court denied and dismissed the petition on September 27, 2004. This Court affirmed that decision on December 1, 2006. *See Commonwealth v. Williams, B.*, 915 A.2d 153 (Pa.Super.2006) (unpublished memorandum).

On March 25, 2010, Appellant filed his second and current petition for collateral relief, seeking DNA testing of hair samples found in the hat/wig discovered near the crime scene. The court issued notice of its intent to dismiss, pursuant to Pa. R.Crim.P. 907, on December 1, 2010, and dismissed the petition on January 5, 2011. On February 4, 2011, Appellant timely filed a notice of appeal. On February 7, 2011, the court ordered Appellant to file a concise statement of errors complained on appeal, pursuant to Pa.R.A.P. 1925(b). Appellant timely complied on February 24, 2011.

Appellant raises two issues for our review:

WHETHER THE PCRA COURT ERRED IN FINDING THAT APPELLANT'S PCRA PETITION WAS UNTIMELY FILED?

WHETHER THE PCRA COURT ERRED IN FINDING THAT DNA SAMPLES WERE AVAILABLE AND COULD HAVE BEEN TESTED BY APPELLANT PRIOR TO TRIAL AND THAT APPELLANT FAILED TO ESTABLISH A *PRIMA FACIE* CASE OF ACTUAL INNOCENCE IF EXCULPATORY RESULTS OF DNA TESTING COULD BE ESTABLISHED?

(Appellant's Brief at 4).

 Generally, "the trial court's application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law." *Commonwealth v. Lewis*, 885 A.2d 51, 55 (Pa.Super.2005), *appeal denied*, 588 Pa. 777, 906 A.2d 540 (2006). When reviewing an order denying a motion for post-conviction DNA testing, this Court determines whether the movant satisfied the statutory requirements listed in Section 9543.1. *Commonwealth v. Brooks*, 875 A.2d 1141, 1147–48 (Pa.Super.2005). We can affirm the court's decision if there is any basis to support it, even if we rely on different grounds to affirm. *See Commonwealth v. Heilman*, 867 A.2d 542 (Pa.Super.2005), *appeal denied*, 583 Pa. 669, 876 A.2d 393 (2005).

On appeal, Appellant first asserts the one-year time limitation does not apply to PCRA petitions that include a request for DNA testing under 42 Pa.C.S.A. § 9543.1. Appellant claims his PCRA petition should have been deemed timely because it encompassed a request for DNA testing of

---

Officer Mariano and two other eyewitnesses identified Appellant from a photo array.

the hair samples from the hat/wig recovered near the crime scene. Appellant seems to suggest that embedding a request for DNA testing in an otherwise untimely PCRA petition automatically renders the petition timely in all respects. Appellant insists he made a *prima facie* case for DNA testing and that alone is sufficient to necessitate an evidentiary hearing on his companion claim of trial counsel's ineffectiveness for failing to obtain DNA testing of that evidence for trial. Appellant focuses on (1) the evidentiary importance of the hair samples, (2) his identity as a disputed issue at trial, and (3) the fact that DNA testing might lead to exculpatory evidence. Appellant contends *Commonwealth v. Williams, R.*, 587 Pa. 304, 899 A.2d 1060 (2006) controls and entitles him straightaway to a hearing on his claim of trial counsel's ineffectiveness for failing to request DNA testing. Appellant concludes this Court should grant his request for DNA testing and remand for a hearing on trial counsel's alleged ineffectiveness. For the reasons that follow, we cannot agree with Appellant's contentions.

 Requests for post-conviction DNA testing are governed by statute at 42 Pa.C.S.A. § 9543.1, which provides in pertinent part:

§ 9543.1. **Postconviction DNA testing**

(a) **Motion.**—

(1) An individual convicted of a criminal offense in a court of this Commonwealth and serving a term of imprisonment or awaiting execution because of a sentence of death may apply by making a written motion to the sentencing court for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

(2) The evidence may have been discovered either prior to or after the applicant's conviction. The evidence shall be available for testing as of the date of the motion. If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995, or the applicant's counsel sought funds from the court to pay for the testing because his client was indigent and the court refused the request despite the client's indigency.

\* \* \*

(c) **Requirements.**—In any motion under subsection (a), under penalty of perjury, the applicant shall:

(1)(i) specify the evidence to be tested;

(ii) state that the applicant consents to provide samples of bodily fluid for use in the DNA testing; and

(iii) acknowledge that the applicant understands that, if the motion is granted, any data obtained from any DNA samples or test results may be entered into law enforcement databases, may be used in the investigation of other crimes and may be used as evidence against the applicant in other cases.

(2)(i) assert the applicant's actual innocence of the offense for which the applicant was convicted; and

\* \* \*

(3) present a *prima facie* case demonstrating that the:

(i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that result-

ed in the applicant's conviction and sentencing; and

(ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:

(A) the applicant's actual innocence of the offense for which the applicant was convicted;

\* \* \*

**(d) Order.—**

(1) Except as provided in paragraph (2), the court shall order the testing requested in a motion under subsection (a) under reasonable conditions designed to preserve the integrity of the evidence and the testing process upon a determination, after review of the record of the applicant's trial, that the:

(i) requirements of subsection (c) have been met;

(ii) evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been altered in any material respect; and

(iii) motion is made in a timely manner and for the purpose of demonstrating the applicant's actual innocence and not to delay the execution of sentence or administration of justice.

(2) The court shall not order the testing requested in a motion under subsection (a) if, after review of the record of the applicant's trial, the court determines that there is no reasonable possibility that the testing would produce exculpatory evidence that:

(i) would establish the applicant's actual innocence of the offense for which the applicant was convicted;

\* \* \*

**(f) Posttesting procedures.—**

(1) After the DNA testing conducted under this section has been completed, the applicant may, pursuant to section 9545(b)(2) (relating to jurisdiction and proceedings), during the 60–day period beginning on the date on which the applicant is notified of the test results, petition to the court for postconviction relief pursuant to section 9543(a)(2)(vi) (relating to eligibility for relief).

(2) Upon receipt of a petition filed under paragraph (1), the court shall consider the petition along with any answer filed by the Commonwealth and shall conduct a hearing thereon.

(3) In any hearing on a petition for postconviction relief filed under paragraph (1), the court shall determine whether the exculpatory evidence resulting from the DNA testing conducted under this section would have changed the outcome of the trial as required by section 9543(a)(2)(vi).

\* \* \*

42 Pa.C.S.A. § 9543.1. The statute sets forth several threshold requirements to obtain DNA testing: (1) the evidence specified must be available for testing on the date of the motion; (2) if the evidence was discovered prior to the applicant's conviction, it was not already DNA tested because (a) technology for testing did not exist at the time of the applicant's trial; (b) the applicant's counsel did not request testing in a case that went to verdict before January 1, 1995; or (c) counsel sought funds from the court to pay for the testing because his client was indigent, and the court refused the request despite the client's indigency. 42 Pa.C.S.A. § 9543.1(a)(2). Additionally,

[T]he legislature delineated a clear standard—and in fact delineated certain portions of the standard twice. Under section 9543.1(c)(3), the petitioner is required to present a *prima facie* case

that the requested DNA testing, assuming it gives exculpatory results, would establish the petitioner's actual innocence of the crime. Under section 9543.1(d)(2), the court is directed not to order the testing if it determines, after review of the trial record, that there is no reasonable possibility that the testing would produce exculpatory evidence to establish petitioner's actual innocence. From the clear words and plain meaning of these provisions, there can be no mistake that the burden lies with the petitioner to make a *prima facie* case that favorable results from the requested DNA testing would establish his innocence. We note that the statute does not require petitioner to show that the DNA testing results would be favorable. However, the court is required to review not only the motion [for DNA testing], but also the trial record, and then make a determination as to whether there is a reasonable possibility that DNA testing would produce exculpatory evidence **that would establish petitioner's actual innocence.** We find no ambiguity in the standard established by the legislature with the words of this statute.

*Commonwealth v. Smith*, 889 A.2d 582, 584 (Pa.Super.2005), *appeal denied*, 588 Pa. 769, 905 A.2d 500 (2006) (emphasis added). The text of the statute set forth in Section 9543.1(c)(3) and reinforced in Section 9543.1(d)(2) requires the applicant to demonstrate that favorable results of the requested DNA testing would establish the applicant's actual innocence of the crime of conviction. *Id.* at 585. The statutory standard to obtain testing requires more than conjecture or speculation; it demands a prima facie case that the DNA results, if exculpatory, would establish actual innocence. *Id.* at 586.

■■ An application for DNA testing should be made in a motion, **not** in a PCRA petition. *Commonwealth v. Weeks*, 831 A.2d 1194, 1196 (Pa.Super.2003). Though brought under the general rubric of the PCRA, motions for post-conviction DNA testing are "clearly separate and distinct from claims brought pursuant to other sections of the PCRA." *Commonwealth v. Perry*, 959 A.2d 932, 938 (Pa.Super.2008). This Court has consistently held the one-year jurisdictional time bar of the PCRA does not apply to motions for DNA testing under Section 9543.1. *Commonwealth v. Conway*, 14 A.3d 101, 108 n. 2 (Pa.Super.2011), *appeal denied*, —— Pa. ——, 29 A.3d 795 (2011); *Perry, supra* at 938; *Brooks, supra* at 1146. Another distinction of motions for DNA testing is that Section 9543.1 does not confer a right to counsel. *Brooks, supra* at 1147.

■ Importantly, a motion for post-conviction DNA testing does not constitute a direct exception to the one year time limit for filing a PCRA petition. *Weeks, supra.* Instead, it gives a convicted person a vehicle "to first obtain DNA testing which could then be used within a PCRA petition to establish new facts in order to satisfy the requirements of an exception under 42 Pa.C.S.A. § 9545(b)(2)." *Id.*

■ This Court has held "that a PCRA petition cannot be used to make a motion for DNA analysis, [*id.*], and the reverse is surely true as well." *Brooks, supra* at 1148. When presented with a hybrid filing that comingles PCRA claims and a request for DNA testing, the standard set forth in Section 9543.1 requires the court to address the DNA request first and foremost. *See id.* A petitioner who is unable to obtain DNA testing under Section 9543.1 can still pursue an ineffective assistance of counsel claim under the PCRA for failure to request DNA testing of evidence at trial, but only if the PCRA petition is timely filed or otherwise meets one of the statutory exceptions to the

timeliness requirements. *See Williams, R., supra* at 310, 899 A.2d at 1063 (holding Section 9543.1(a)(2) foreclosed petitioner's request for DNA because "the technology was available at the time of his trial, the verdict was rendered after January 1, 1995, and the court never refused funds for the testing"; but stating petitioner could still pursue straightforward claim of counsel's ineffectiveness related to counsel's failure to seek DNA analysis at trial, where petitioner's PCRA petition was **timely filed**). *Cf. Commonwealth v. Gamboa–Taylor*, 562 Pa. 70, 753 A.2d 780 (2000) (rejecting outright appellant's attempt to interweave concepts of ineffective assistance of counsel and after-discovered facts as means to establish jurisdiction and justify otherwise untimely PCRA petition).

▮ In the instant case, the hair samples at issue were discovered before Appellant's trial in 2000, the DNA testing technology was available at the time of Appellant's trial in 2000, the verdict was rendered after January 1, 1995, and the court did not refuse funds for the testing. *See* 42 Pa.C.S.A. § 9543.1(a)(2). *See also Perry, supra*, at 938 (affirming denial of request for DNA testing because technology for testing was available at time of applicant's trial, verdict was entered after January 1, 1995, and trial court did not deny funds for testing, despite applicant's indigence). Thus, the PCRA court properly concluded that Appellant did not meet the threshold requirements for DNA testing under Section 9543.1(a)(2).

Further, the court followed the mandate in 42 Pa.C.S.A. § 9543.1(c)(3) and (d)(2) to assess Appellant's request for DNA testing in light of the trial record to see if there were a reasonable possibility that the testing would produce exculpatory evidence to establish Appellant's actual innocence. As the PCRA court observed:

Hair was found in a wig worn by the perpetrator of the offenses for which Appellant was convicted. If the hair in the wig were [DNA] tested and found not to be Appellant's, this evidence would be far from sufficient to establish a *prima* [*facie*] case of actual innocence. The lack of Appellant's DNA in the hair sample would neither disprove that Appellant wore the wig during the crime nor prove that Appellant did not wear the wig on the day in question.

(PCRA Court Opinion, dated April 6, 2011, at 3–4). We agree. Appellant provided no evidentiary basis to infer that any of the other DNA detected in the hat/wig was left there by the "true" perpetrator of the crimes. Moreover, a "hair analysis comparison" was performed prior to trial; and the Commonwealth presented those results at trial through expert testimony. The Commonwealth's expert testified that characteristics of some of the unknown hairs from the hat/wig were consistent with the samples taken from Appellant. That testimony was subjected to rigorous cross-examination where defense counsel was able to elicit testimony that some of the hairs recovered from the hat/wig were also inconsistent with Appellant's samples. (*See* N.T. Trial, 8/3/00, at 147–186).

Given the circumstances of the case and the speculative nature of Appellant's claim, DNA testing would not establish his actual innocence, even if his DNA were completely absent from the hat/wig. In that respect, the court reasoned:

This alleged *prima* [*facie*] evidence of actual innocence would have to be weighed against evidence gathered at trial which overwhelmingly supported the verdict. The evidence includes an admission by Appellant and an identification of Appellant by the victim and two other witnesses, one of whom was a retired police officer. Additionally, [an-

other] witness testified that Appellant admitted to the crime and to wearing the wig. Considering the case in its entirety, DNA evidence that the hair did not belong to [Appellant], ... fails to establish a *prima [facie]* case of actual innocence....

(PCRA Court Opinion, dated April 6, 2011, at 4). We agree. Appellant's purported *"prima facie"* case of actual innocence mistakenly presumes there was no other evidence of record to tie him to the crimes. To the contrary, the evidence in this case was more than just circumstantial; the evidence involved three unshakable eyewitnesses, a confession, and access to the weapon used in the crimes. *Cf. Conway, supra* (reversing court's decision to deny DNA testing and holding reasonable possibility existed that DNA testing could prove applicant's actual innocence sufficient to warrant testing, where evidence produced at trial, except for testimony from jailhouse informant, was wholly circumstantial, facts of case indicated extensive physical contact between victim and assailant, and investigators collected plenty of material from victim under belief victim might have had contact with skin of her assailant). Under the facts and circumstances of the present case, we have no reason to disturb the court's decision to deny Appellant's request for DNA testing. As such, what remained before the court was Appellant's PCRA petition alleging trial counsel's ineffectiveness for failing to request at trial DNA testing of the hairs recovered from the hat/wig.

■■■■ Moving to the second part of the analysis required in this case, we observe that the timeliness of a PCRA petition is a jurisdictional requisite. *Commonwealth v. Hackett*, 598 Pa. 350, 956 A.2d 978 (2008), *cert. denied*, —— U.S. ——, 129 S.Ct. 2772, 174 L.Ed.2d 277 (2009). "Jurisdictional time limits go to a court's right

or competency to adjudicate a controversy." *Id.* at 359, 956 A.2d at 983. Pennsylvania law makes clear no court has jurisdiction to hear an untimely PCRA petition. *Commonwealth v. Robinson*, 575 Pa. 500, 508, 837 A.2d 1157, 1161 (2003). The PCRA now requires a petition, including a second or subsequent petition, to be filed within one year of the date the underlying judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1); *Commonwealth v. Bretz*, 830 A.2d 1273, 1275 (Pa.Super.2003); *Commonwealth v. Vega*, 754 A.2d 714, 717 (Pa.Super.2000). A judgment is deemed final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking review." 42 Pa.C.S.A. § 9545(b)(3).

■■■ Generally, to obtain merits review of a PCRA petition filed more than one year after a petitioner's sentence became final, the petitioner must allege and prove at least one of the three timeliness exceptions. *See* 42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). To invoke an exception, a petition must allege and the petitioner must prove:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section

and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). "[W]hen a PCRA petition is not filed within one year of the expiration of direct review, or not eligible for one of the three limited exceptions, or entitled to one of the exceptions, but not filed within 60 days of the date that the claim could have been first brought, the trial court has no power to address the substantive merits of a petitioner's PCRA claims." *Gamboa–Taylor, supra* at 77, 753 A.2d at 783; 42 Pa.C.S.A. § 9545(b)(2).

The timeliness exception set forth in Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence. *Commonwealth v. Bennett,* 593 Pa. 382, 395, 930 A.2d 1264, 1271 (2007). Due diligence demands that the petitioner take reasonable steps to protect his own interests. *Commonwealth v. Carr,* 768 A.2d 1164, 1168 (Pa.Super.2001). A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. *Commonwealth v. Breakiron,* 566 Pa. 323, 330–31, 781 A.2d 94, 98 (2001). This rule is strictly enforced. *Vega, supra.*

■■■■ The statutory exceptions to the timeliness requirements of the PCRA are also subject to a separate time limitation and must be filed within sixty (60) days of the time the claim could first have been presented. *See* 42 Pa.C.S.A. § 9545(b)(2); *Gamboa–Taylor, supra.* The sixty (60) day time limit related to Section 9545(b)(2) runs from the date the petitioner first learned of the alleged after-discovered facts. *Commonwealth v. Albrecht,* 606 Pa. 64, 994 A.2d 1091 (2010). A petitioner must explain when he first learned of the facts underlying his PCRA claims and show that he brought his claim within sixty

(60) days thereafter. *Id.* (holding petitioner failed to demonstrate his PCRA petition was timely where he did not explain when he first **learned** of facts underlying his PCRA petition) (emphasis added). "A petitioner fails to satisfy the 60–day requirement of Section 9545(b) if he ... fails to explain why, with the exercise of due diligence, the claim could not have been **filed** earlier." *Commonwealth v. Marshall,* 596 Pa. 587, 596, 947 A.2d 714, 720 (2008) (emphasis added). All of the time limits set forth in the PCRA are jurisdictional and must be strictly construed. *Commonwealth v. Fahy,* 598 Pa. 584, 589, 959 A.2d 312, 315 (2008).

Instantly, the trial court sentenced Appellant on October 24, 2000. Following direct review in this Court, our Supreme Court denied allowance of appeal on March 27, 2002. Appellant's judgment of sentence became final on June 25, 2002, upon expiration of the time to file a petition for writ of *certiorari* with the United States Supreme Court. *See* U.S.Sup.Ct.R. 13 (allowing 90 days to file petition for writ of *certiorari* with Supreme Court). Appellant filed his current PCRA petition on March 25, 2010, almost eight years later. Thus, Appellant's current PCRA petition was facially untimely.

Further, Appellant's request for DNA testing did not constitute a direct exception to the time bar of the PCRA. *See Weeks, supra.* Appellant first had to meet the standards for DNA testing, obtain the DNA testing, and then offer the exculpatory results as an exception to the PCRA time limits within sixty days after receiving the results. *See id.* Instead, Appellant mistakenly embedded his request for DNA testing in a PCRA petition and relied solely on his **request** for DNA testing to satisfy the newly discovered facts exception at 42 Pa.C.S.A. § 9545(b)(2). Once his request for DNA testing was denied,

Appellant could not rely on his ineffectiveness of trial counsel claim to satisfy the statutory exception. *See Commonwealth v. Bronshtein,* 561 Pa. 611, 616–17, 752 A.2d 868, 871 (2000) (concluding appellant cannot couch claim in terms of counsel's ineffectiveness to obtain merits review of untimely PCRA petition). *Compare Bennett, supra* (identifying extremely limited exception to *Gamboa–Taylor* rule barring ineffectiveness claim as newly discovered facts exception, where counsel abandoned petitioner on appeal, abandonment was unknown to petitioner, and petitioner filed for PCRA relief within sixty days of learning of counsel's abandonment). Because Appellant's particular ineffective assistance of counsel claim as presented does not warrant the *Bennett* exception, it falls under *Gamboa–Taylor* and its progeny. *See Gamboa–Taylor, supra* at 80, 753 A.2d at 785 (holding ineffectiveness of counsel claim generally does not constitute exception to PCRA time requirements). In essence, Appellant's current PCRA petition was untimely. Thus, the PCRA court was without jurisdiction to hear the petition and properly dismissed it without a hearing. *See Robinson, supra.* Accordingly, we affirm.

Order affirmed.