J-S70027-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JEROME ALLAN LOACH, | : | |
| | : | |
| Appellant | : | No. 1353 EDA 2015 |

Appeal from the PCRA Order April 24, 2015,
Court of Common Pleas, Montgomery County,
Criminal Division at No. CP-46-CR-0023680-1988

BEFORE:  DONOHUE, LAZARUS and PLATT*, JJ.

MEMORANDUM BY DONOHUE, J.:                    **FILED DECEMBER 11, 2015**

Appellant, Jerome Allan Loach ("Loach"), appeals pro se from the order entered on April 24, 2015 by the Court of Common Pleas of Montgomery County, Criminal Division, dismissing his sixth petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

This case arises from a May 24, 1988 brawl involving four inmates at the State Correction Institution in Graterford, Montgomery County, Pennsylvania, which resulted in the stabbing death of William Jamal Brawley ("Brawley").  During the fight, witnesses observed Loach repeatedly stab two of the inmates involved in the fight with a homemade shank.  Most notably, one of these stabbing victims was Brawley, whom Loach fatally stabbed in the neck.

*Retired Senior Judge assigned to the Superior Court.

The PCRA court summarized the relevant procedural history of this case as follows:

A jury found Loach guilty of third[-]degree murder, three counts of aggravated assault, assault by a prisoner, possession of instruments of crime, and criminal attempt at first[-]degree murder. On June 14, 1990, the Pennsylvania Superior Court affirmed his judgment of sentence. The Pennsylvania Supreme Court denied his petition for allowance of appeal on October 30, 1990.

The instant petition is [Loach's] sixth under the [PCRA]. [Loach] filed a pro se [PCRA petition] in January of 1991. A re-sentencing hearing was held on June 20, 1991. [Loach] filed a second PCRA petition on June 20, 1991. In September 1991, the PCRA [c]ourt denied this second petition. The Superior Court affirmed this denial in 1992. [Loach] again filed for allocatur, which was denied by the Pennsylvania Supreme Court. Loach filed his third PCRA petition, pro se, in 1995, which was subsequently denied. This decision was affirmed by the Superior Court and allocatur was once again denied.

On December 31, 1996, [Loach] filed a pro se petition for [w]rit of [h]abeas [c]orpus in the United States District Court for the Eastern District of Pennsylvania. In May of 1999, Thomas Quinn, Esquire was appointed to represent Loach in the habeas corpus proceedings. An evidentiary hearing was held in March of 2000 and Loach's pro se [p]etition for [w]rit of [h]abeas [c]orpus was denied.

In January of 2003, [Loach] filed a fourth PCRA petition. This [c]ourt denied the petition on October 1, 2003. Specifically, this [c]ourt found that it lacked jurisdiction as the petition was untimely. The Superior Court affirmed this [c]ourt's decision on August 12, 2004.

On October 28, 2008, Loach filed a [p]etition to [v]acate, [v]oid [j]udgment, [b]ased [u]pon [f]raud and [w]ant for [s]ubject [m]atter [j]urisdiction. This [c]ourt denied the petition on November 3, 2008, and the Superior Court affirmed this [c]ourt's decision on July 2, 2009.

PCRA Court Opinion, 7/15/15, at 1-2 (footnotes omitted).

On February 4, 2015, Loach filed the instant PCRA petition. Within this PCRA petition, Loach also included a request for the post conviction DNA testing of a shank and white bloody t-shirt that prison authorities recovered from the scene of Brawley's stabbing pursuant to 42 Pa.C.S.A. § 9543.1. *See* PCRA Petition, 2/4/15, ¶¶ 25-29. On March 13, 2015, the Commonwealth filed an answer to Loach's sixth PCRA petition. On April 24, 2015, the PCRA court denied Loach's sixth PCRA petition, including the request for the post conviction DNA testing of the shank and white bloody t-shirt. On May 12, 2015, Loach filed a timely pro se notice of appeal.[1]

On appeal, Loach raises the follow issues for our review:

1.    Did the PCRA court erred [sic] as a matter of law when it concluded that DNA testing is untimely pursuant to 42 Pa.C.S. § 9543.1(c) & (d)(1)(iii) [and that] there is no reasonable possibility that DNA testing could prove [Loach]'s actual innocence, in light of a clear ***Brady*** violation that has resulted in a miscarriage of justice[?]

---

[1]    The PCRA court did not order Loach to file a concise statement of the errors complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure.

2. Pursuant to **Bunkley v. Florida**, 538 U.S. 835 (2003), did the PCRA court erred [sic] in denying relief on the general and specific penal statutes without deciding whether [Loach's] conviction upon both statutes [was] unconstitutional and in violation of the Due Process Clause, **Commonwealth v. Lussi**, 757 A.2d 361 ([Pa.] 2000), for purposes of state law at the time [Loach]'s conviction became final. **Fiore v. White**, 531 U.S. 225 (2001)[?]

3. Did the PCRA court erred [sic] as a matter of law in dismissing [Loach]'s PCRA petition without the appointment of counsel on a first PCRA/or [sic] did the court erred [sic] as a matter of law in not allowing an amendment to a first PCRA petition[?]

4. Did the PCRA court violate [Loach]'s due process and substantive due process rights when it refused an appeal to take place during [his] re-sentencing hearing; and is [Loach] entitled to relief under the authority of **Commonwealth v. Lantzy**, 736 A.2d 564 ([Pa.] 1999)[,] and **Roe v. Flores-Ortega**, 528 U.S. 470 (2000), where counsel failed to consult or file a requested appeal[?]

5. Did the PCRA court erred [sic] as a matter of law in denying relief, when the prosecutor struck an African-American off the jury, thereby[] violating [Loach]'s Fourteenth Amendment [s]ubstantive [d]ue [p]rocess [r]ights such that counsel was obliged to raise that particular objection, and brief the issue[?] Furthermore, did the trial court erred [sic] in not making a ruling on the **Batson v. Kentucky** 476 U.S. 79 (1986)[] violation[?]

J-S70027-15

Loach's Brief at i-ii.[2]

For his first issue on appeal, Loach argues that the trial court erred by denying his request for the post conviction DNA testing of two shanks and a white bloody t-shirt that prison authorities allegedly recovered from the scene of Brawley's murder. **See** Loach's Brief at 33-44. "[W]hen examining the propriety of an order resolving a request for DNA testing, we employ the PCRA standard of review." **Commonwealth v. Gacobano**, 65 A.3d 416, 419 (Pa. Super. 2013). "Our standard of review regarding a PCRA court's order is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." **Commonwealth v. Garcia**, 23 A.3d 1059, 1061 (Pa. Super. 2011). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Id.**

Regarding requests for post conviction DNA testing, this Court has stated the following:

> An application for DNA testing should be made in a motion, **not** in a PCRA petition. **Commonwealth v. Weeks**, 831 A.2d 1194, 1196 (Pa. Super. 2003). Though brought under the general rubric of the PCRA, motions for post-conviction DNA testing are "clearly separate and distinct from claims brought pursuant to other sections of the PCRA." **Commonwealth v. Perry**, 959 A.2d 932, 938 (Pa. Super. 2008). This Court has consistently held [that] the one-year jurisdictional time bar of the

---

[2] We reordered and reformatted the issues Loach raises on appeal for ease of review.

- 5 -

PCRA does not apply to motions for DNA testing under [s]ection 9543.1. ***Commonwealth v. Conway***, 14 A.3d 101, 108 n.2 (Pa. Super. 2011), *appeal denied*, [] 29 A.3d 795 ([Pa.] 2011); ***Perry***, ***supra*** at 938; [***Commonwealth v. Brooks***, 875 A.2d 1141, 1146 (Pa. Super. 2005)]. Another distinction of motions for DNA testing is that [s]ection 9543.1 does not confer a right to counsel. ***Brooks***, ***supra*** at 1147.

Importantly, a motion for post-conviction DNA testing does not constitute a direct exception to the one[-]year time limit for filing a PCRA petition. ***Weeks***, ***supra***. Instead, it gives a convicted person a vehicle "to first obtain DNA testing which could then be used within a PCRA petition to establish new facts in order to satisfy the requirements of an exception under 42 Pa.C.S.A. § 9545(b)(2)." ***Id.***

This Court has held "that a PCRA petition cannot be used to make a motion for DNA analysis, [***id.***], and the reverse is surely true as well." ***Brooks***, ***supra*** at 1148. When presented with a hybrid filing that comingles PCRA claims and a request for DNA testing, the standard set forth in [s]ection 9543.1 requires the court to address the DNA request first and foremost. ***See id.*** A petitioner who is unable to obtain DNA testing under [s]ection 9543.1 can still pursue an ineffective assistance of counsel claim under the PCRA for failure to request DNA testing of evidence at trial, but only if the PCRA petition is timely filed or otherwise meets one of the statutory exceptions to the timeliness requirements.

***Commonwealth v. Williams***, 35 A.3d 44, 50-51 (Pa. Super. 2011) (emphasis in original).

Loach claims that on the day of Brawley's murder, two inmates, one of whom was Brawley, attacked him and another inmate in an attempted robbery. Loach's Brief at 5. Loach avers that at the outset of the attack

Brawley was wielding a shank ("the first shank"). *Id.* Loach contends that while he was attempting to wrestle that shank away from Brawley, an unidentified fifth inmate wearing a white t-shirt emerged from a crowd of inmates with another shank ("the second shank") and fatally stabbed Brawley in the neck. *Id.* While Loach admits that he eventually wound up with the first shank, he asserts that he was not the person who killed Brawley. *Id.*

Loach now seeks the DNA testing of both shanks and a white bloody t-shirt that he avers prison authorities recovered from the scene of Brawley's murder. *See id.* at 33-44. Loach believes that the DNA testing of each of these objects will prove his actual innocence because his conviction was based entirely on circumstantial evidence. *See id.* Loach argues that if DNA testing of the first shank reveals the absence of his DNA and Brawley's DNA, than it cannot be the murder weapon. *See id.* at 42. Additionally, Loach argues that if DNA testing of the second shank, which he avers was used by an inmate in a white t-shirt, reveals the absence of his DNA and the presence of the DNA of an unidentified inmate, it proves his claim that the unidentified fifth inmate was involved in the fight and killed Brawley. *See id.* Finally, Loach contends that if DNA testing of the white bloody t-shirt reveals the absence of his DNA and the presence of the DNA of an unidentified inmate, it will prove that he was not the person in the white t-

shirt who he contends murdered Brawley, because he was wearing a brown shirt on the day in question. *See id.*

Requests for post conviction DNA testing are governed by 42 Pa.C.S.A. § 9543.1. The statute sets forth several threshold requirements to obtain post conviction DNA testing. Most relevant to this case are the following mandates. Section 9543.1(c)(1)(i) requires an applicant seeking the DNA testing of evidence to specify the evidence to be tested. 42 Pa.C.S.A. § 9543.1(c)(1)(i). The evidence specified must be available for testing as of the date of the motion. 42 Pa.C.S.A. § 9543.1(a)(2).

Additionally,

> [u]nder section 9543.1(c)(3), the petitioner is required to present a prima facie case that the requested DNA testing, assuming it gives exculpatory results, would establish the petitioner's actual innocence of the crime. Under section 9543.1(d)(2), the court is directed not to order the testing if it determines, after review of the trial record, that there is no reasonable possibility that the testing would produce exculpatory evidence to establish [the] petitioner's actual innocence. From the clear words and plain meaning of these provisions, there can be no mistake that the burden lies with the petitioner to make a prima facie case that favorable results from the requested DNA testing would establish his innocence. We note that the statute does not require petitioner to show that the DNA testing results would be favorable. However, the court is required to review not only the motion, but also the trial record, and then make a determination as to whether there is a reasonable possibility that DNA testing would produce exculpatory evidence that would establish petitioner's actual innocence.

*Commonwealth v. Smith*, 889 A.2d 582, 584 (Pa. Super. 2005) (footnote omitted). In order to establish a defendant's actual innocence, "the newly discovered evidence must make it 'more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.' … [T]his standard requires a reviewing court 'to make a probabilistic determination about what reasonable, properly instructed jurors would do,' if presented with the new evidence." *Commonwealth v. Conway*, 14 A.3d 101, 109 (Pa. Super. 2011) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

We conclude that the PCRA court did not err by denying Loach's request for post conviction DNA testing. At the outset, we observe that Loach failed to request the DNA testing of the second shank in his petition to the PCRA court. *See* PCRA Petition, 2/4/15, ¶¶ 25-29. Indeed, Loach's PCRA petition does not even reference a second shank. *See id.* Accordingly, Loach has waived his DNA testing claim with respect to the second shank.[3] *See* 42 Pa.C.S.A. § 9543.1(c)(1)(i); *see also* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Moreover, there is no evidence of record supporting the existence of a second shank. The certified record

---

[3] Waiver is further supported by the absence of discussion relating to a second shank in the trial court's opinion, *see* Trial Court Opinion, 7/15/15, at 3-8, or the Commonwealth's answer to Loach's PCRA petition, *see* Commonwealth's Answer to Defendant's Petition for Relief Under the PCRA and for DNA Testing, 3/13/15.

reflects that there was only one shank used during the fight and only one shank recovered from the crime scene. **See** N.T., 2/16/89, at 66-70.

Regarding the first shank and white bloody t-shirt, even if DNA testing of those items returned results favorable to Loach, it would not necessarily prove Loach's actual innocence. This Court has held that "the mere absence of appellant's DNA on any of the tested items will not provide compelling evidence of his innocence." **Conway**, 14 A.3d at 110; **see also Commonwealth v. Heilman**, 867 A.2d 542, 547 (Pa. Super. 2005) ("In DNA as in other areas, an absence of evidence is not evidence of absence."). Favorable DNA testing results from the first shank and white bloody t-shirt would have to overcome the direct evidence of Loach's guilt. Contrary to Loach's assertion, he was not convicted solely based on circumstantial evidence.

The certified record reveals that three witnesses testified that they observed Loach wielding a shank during the brawl and thrusting it at other inmates. The record reflects that two inmates, Norman Graham ("Graham") and Dwayne Grant, observed Loach with a shank repeatedly stabbing Brawley. N.T., 2/16/89, at 113-14, 123-24, 166-67. The record further reflects that Graham witnessed Loach deliver the fatal blow to Brawley when Loach stabbed Brawley in the neck. **Id.** at 123-24. Additionally, Sergeant Michael Bivins ("Sergeant Bivins") testified that he saw Loach with a shank trying to stab multiple inmates and that he still had the shank after the

brawl had concluded. N.T., 2/15/89, at 232-33. Although Dr. Lance Couturier, the prison's Chief Psychologist, testified that the person who was wielding the shank during the fight was wearing a white t-shirt, he observed the brawl from at least seventy-five feet away, did not observe that person stab anyone, and could not identify anyone involved in the fight. N.T., 2/17/89, at 75-79, 82.

Thus, there is direct eyewitness testimony that Loach was the only person during that brawl that wielded a shank, that he stabbed Brawley multiple times, including in the neck, and that he still possessed that shank after the brawl. There is also direct eyewitness testimony of Loach thrusting the shank at other inmates during the scrum. Accordingly, based on this direct eyewitness testimony, we must conclude that the even if the results of the DNA testing on the first shank and bloody white t-shirt were favorable to Loach, it would not establish his actual innocence of the crime. *See Smith*, 889 A.2d at 584; *Conway*, 14 A.3d at 109.

Moreover, the certified record reflects that Loach's request for DNA testing fails pursuant to section 9543.1(a)(2), which requires that the evidence specified for DNA testing must be available for testing as of the date of the motion. *See* 42 Pa.C.S.A. § 9543.1(a)(2). In its answer to Loach's PCRA petition, the Commonwealth asserts that it was unable to find the handle of the first shank or the white bloody t-shirt. *See* Commonwealth's Answer to Defendant's Petition for Relief Under the PCRA

- 11 -

and for DNA Testing, 3/13/15, ¶ 21. It is unclear from the record if either party, to this point, has recovered these items. Accordingly, we must conclude that the trial court did not err in denying Loach's request for post conviction DNA testing.

We now turn our attention to Loach's PCRA claims. Prior to addressing the merits of Loach's claims, we must determine whether we have jurisdiction to decide these issues. "Pennsylvania law makes clear no court has jurisdiction to hear an untimely PCRA petition." *Commonwealth v. Monaco*, 996 A.2d 1076, 1079 (Pa. Super. 2010) (quoting *Commonwealth v. Robinson*, 837 A.2d 1157, 1161 (Pa. 2003)). A petitioner must file a PCRA petition within one year of the date on which the petitioner's judgment became final, unless one of the three statutory exceptions apply:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1). A petitioner must file a petition invoking one of these exceptions "within 60 days of the date the claim could have been

presented." 42 Pa.C.S.A. § 9545(b)(2). If a petition is untimely, and the petitioner has not pled and proven any exception, "'neither this Court nor the trial court has jurisdiction over the petition. Without jurisdiction, we simply do not have the legal authority to address the substantive claims.'" ***Commonwealth v. Derrickson***, 923 A.2d 466, 468 (Pa. Super. 2007) (quoting ***Commonwealth v. Chester***, 895 A.2d 520, 522 (Pa. 2006)).

Loach's instant PCRA petition is facially untimely and he does not contest this determination. Accordingly, we are without jurisdiction to decide Loach's claims unless he pled and proved one of the three timeliness exceptions of section 9545(b)(1). ***See id.*** As Loach did not attempt to plead or prove any of the timeliness exceptions of section 9545(b)(1) in his PCRA petition, we are without jurisdiction to address the merits of his PCRA claims. ***See id.***

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/11/2015

- 13 -