J-S80038-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MILTON SIMON WASHINGTON, | : | |
| | : | |
| Appellant | : | No. 1482 EDA 2018 |

Appeal from the PCRA Order April 30, 2018
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s):  CP-39-CR-0000515-1987

BEFORE: BENDER, P.J.E., BOWES, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                **FILED JANUARY 16, 2019**

Appellant Milton Simon Washington appeals *pro se* from the order dismissing his fifth Post Conviction Relief Act[1] (PCRA) petition.  Appellant challenges the post-conviction DNA testing conducted prior to the filing of his fourth PCRA petition.  We affirm.

The parties are familiar with the factual and procedural history of Appellant's 1988 conviction for murder of the first degree and Appellant's previous attempts at post-conviction relief.  We note that the Commonwealth asserted that Appellant learned that the victim no longer wanted to be a prostitute and killed her by striking her with a wooden board and stabbing her

---

[1] 42 Pa.C.S. §§ 9541-9546.

multiple times.[2]  Of relevance to this appeal, the coroner collected nail clippings and vaginal, anal, throat, and gum swabs during the victim's autopsy.  N.T., 9/22/87, at 279-81.  At trial, the Commonwealth presented evidence that the vaginal swab tested positive for the presence of semen.  ***Id.***  However, no forensic evidence connected Appellant to the crime scene.  ***Id.***

Appellant's conviction became final in 2000, after this Court affirmed the judgment of sentence.  Appellant filed several PCRA petitions, which were denied or dismissed as untimely.

Appellant then obtained counsel through the Pennsylvania Innocence Project (Innocence Project).  In 2012, the PCRA court ordered post-conviction DNA testing of materials found at the crime scene pursuant to an agreement between the parties.  In Paragraph 2 of an order docketed on March 6, 2012, the PCRA court directed testing on evidence that was in possession of the clerk of the court, namely, pieces of the board used to strike the victim, a knife found at the scene of the murder, and the victim's clothes.[3]  Order, 3/6/12, at ¶ 2.

---

[2] The Commonwealth did not allege that Appellant sexually assaulted the victim before killing her and did not charge Appellant with a sexual offense. To the contrary, the Commonwealth argued that Appellant staged the murder scene to suggest that the victim was killed after a sexual encounter.

[3] Specifically, Paragraph 2 of the March 6, 2012 order indicated that:

Paragraph 3 of the March 6, 2012 order also directed the police and the coroner to locate the evidence obtained during the victim's autopsy.[4] *Id.* at ¶ 3. However, on August 28, 2012, the parties agreed to entry of an amended order striking Paragraph 3 of the March 6, 2012 order. *See* Stip. of the Parties to Terms and Conditions of DNA Testing, 8/28/12, at 1; Order, 8/28/12.

_____

> Counsel for [Appellant] has confirmed that the Clerk of the Criminal Court, Lehigh county, has retained the following items of evidence in its possession:
>
>> a. numerous pieces of wood;
>>
>> b. a silver pocketknife;
>>
>> c. the victim's clothing, including her bra, sweater, pants, jacket, sandals, and underwear, and
>>
>> d. the victim's personal items, including her wallet, comb, and the contents of her wallet.

Order, 3/6/12, at ¶ 2.

[4] Paragraph 3 of the March 6, 2012 order stated:

> Within 60 days of this Order, the Pennsylvania State Police Crime Laboratory at Bethlehem, PA, the Allentown Police Department and the Lehigh County Office of the Coroner shall inform the [c]ourt of its efforts to locate any documentation and material regarding the physical evidence collected and/or received in reference to the murder of [the victim] on June 30, 1986 in Allentown, PA, including but not limited to the evidence collected during the victim's autopsy: gum, throat, anal and vaginal smears and swabs, and the victim's fingernail clippings. That information shall be forwarded to the undersigned attorneys for [Appellant] and the Commonwealth.

Order, 3/6/12, at ¶ 2.

The testing of the evidence revealed that semen on the victim's pants did not match Appellant's DNA.[5] Based on that evidence, the Innocence Project filed a fourth PCRA petition on Appellant's behalf. The PCRA court denied Appellant's fourth PCRA petition, concluding that the new evidence would not have changed the outcome at trial. This Court affirmed the PCRA court's order on September 12, 2017, and the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on February 21, 2018. *See Commonwealth v. Washington*, 3596 EDA 2015 (Pa. Super. Sept. 12, 2017) (unpublished mem.), *appeal denied*, 682 MAL 2017 (Pa. Feb. 21, 2018).

On April 3, 2018, the PCRA court docketed Appellant's *pro se* PCRA petition giving rise to this appeal. In his fifth PCRA petition, Appellant sought "to complete the court[']s stipulated order whereas the State would not allow DNA testing on a rape kit." Appellant's Fifth PCRA Pet., 3/28/18. Appellant asserted that the failure to test "the rape kit" violated the PCRA court's March 6, 2012 order and *Brady v. Maryland*, 373 U.S. 83 (1963). *Id.* According to Appellant, the Commonwealth was required to offer an explanation why the "rape kit" was withheld. *Id.* at 5. In referencing the "rape kit," Appellant cited to the evidence obtained during the victim's autopsy. *Id.* at 4-5.

_____

[5] The DNA from the victim's pants did not yield any further investigative leads.

The PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's fifth PCRA petition without a hearing. Appellant filed a response. On April 30, 2017, the PCRA court dismissed Appellant's petition. This timely appeal followed.[6]

Appellant raises the following issues in his *pro se* brief:

1. The court erred by failing to enforce [its] own stipulated order upon the [Commonwealth] to turn over the rape kit to complete DNA testing ordered by the [court].

2. The court erred in the suppression of the rape kit for a comparison match to DNA on the victim['s] jeans. The suppression of the rape [kit] violated the stipulated order.

3. The court erred in violating [its] own stipulated order by [its] failure to comply with the agreement of both parties.

4. The court erred in [its] failure to complete DNA testing on the withheld rape kit in the Commonwealth's possession.

Appellant's Brief at 7.

We summarize Appellant's arguments for all of his issues. Appellant asserts that the Commonwealth or the PCRA court suppressed the autopsy evidence and violated the March 6, 2012 order for post-conviction DNA testing. *Id.* at 14. Appellant also objects to the August 28, 2012 stipulation and order, which struck Paragraph 3 of the March 6, 2012 order. *Id.* at 16.

---

[6] Appellant complied with the PCRA court's order to file a statement of errors complained on appeal.

Lastly, Appellant alleges that the Commonwealth withheld evidence that the vaginal swab from the victim's autopsy tested positive for semen. **Id.** at 18.

The standards governing our review are well settled:

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. We grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Further, where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary.

**Commonwealth v. Ford**, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

It is well settled that "[t]he PCRA's timeliness requirements are jurisdictional in nature and must be strictly construed." **Commonwealth v. Abu–Jamal**, 941 A.2d 1263, 1267-68 (Pa. 2008) (citations omitted). A PCRA petition "must normally be filed within one year of the date the judgment becomes final . . . unless one of the exceptions in § 9545(b)(1)(i)-(iii) applies." **Commonwealth v. Copenhefer**, 941 A.2d 646, 648 (Pa. 2007) (citations and footnote omitted). To establish an exception to the PCRA time bar, a petitioner must plead and prove that:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii).

Here, although Appellant's fifth PCRA petition was untimely on its face, Appellant's brief does not specifically discuss an exception to the PCRA time bar. To the extent Appellant refers to the suppression of the autopsy evidence, Appellant has not established that such evidence still existed, was in the possession of the Commonwealth or the court, or was withheld by a government official.[7] Moreover, Appellant's allegation that the Commonwealth withheld evidence of the fact that the vaginal swab tested

---

[7] We acknowledge that a request for post-conviction DNA testing under 42 Pa.C.S. § 9543.1 is not subject to the PCRA's timeliness requirements. **See** **Williams**, 35 A.3d 44, 50 (Pa. Super. 2011). However, because Appellant has failed to establish that the evidence from the victim's autopsy was available when he filed his fifth PCRA petition, Appellant did not establish a right to additional DNA testing under Section 9543.1. **See** 42 Pa.C.S. § 9543.1(a)(2).

Moreover, Appellant's contention that that the PCRA court violated its March 6, 2012 order is frivolous. Appellant, through counsel, agreed to strike the requirement that the police and the coroner locate documents or materials from the victim's autopsy. **See** Stip. of the Parties to Terms and Conditions of DNA Testing, 8/28/12, at 1. Any objection to the scope of the March 6, 2012 and August 28, 2012 orders should have been raised during the litigation of Appellant's requests for post-conviction DNA testing orders.

positive for the presence of sperm lacks any support in the record.  ***See*** N.T., 9/22/87, at 279-81.

Therefore, Appellant's fifth PCRA petition was untimely.  ***See Abu-Jamal***, 941 A.2d at 1267-68.  Having discerned no error of law, we affirm the PCRA court's order.  ***See Ford***, 44 A.3d at 1194.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/16/19