J-S12035-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANGEL EMANUEL IRIZARRY, | : | |
| | : | |
| Appellant | : | No. 1386 MDA 2018 |

Appeal from the Order Entered August 7, 2018
in the Court of Common Pleas of Lancaster County
Criminal Division at No(s):  CP-36-CR-0001243-2000

BEFORE:  BOWES, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                **FILED APRIL 16, 2019**

Angel Emanuel Irizarry ("Irizarry") appeals, *pro se*, from the Order dismissing his Motion for DNA testing filed pursuant to Section 9543.1 of the Post Conviction Relief Act ("PCRA").[1, 2]  We affirm.

The PCRA court provided the following relevant factual and procedural history as follows:

> On September 12, 2000, a jury found Irizarry guilty of two counts of attempted first-degree murder, five counts of aggravated assault, one count of criminal attempt to commit robbery, criminal conspiracy to commit robbery, and three counts of reckless endangerment of another person ....[3]  The testimony at trial established that Irizarry was involved with three other individuals in planning and attempting to commit an armed robbery of a store in Lancaster City on February 16, 2000, during the lunch hour.

---

[1] ***See*** 42 Pa.C.S.A. §§ 9541-9546.

[2] We note that this is Irizarry's third request for relief under the PCRA.

[3] ***See*** 18 Pa.C.S.A. §§ 901, 2502(a), 2702(a)(1)-(4), 3701(a)(1)(iii), 903, 2705.

When the police interrupted their attempted robbery, Irizarry pulled out a .223 caliber semi-automatic rifle and unloaded 19 of the 30 bullets from his clip, firing directly at a Lancaster City police officer and a Lancaster County deputy sheriff. The police officer and several bystanders sustained injuries. Irizarry was seen by numerous witnesses as he engaged in this rampage, and was caught behind the Lancaster County Courthouse still in possession of the rifle.

…

On November 6, 2000, Irizarry was sentenced to a total aggregate term of … 39 years, 3 months to 78 years, 6 months [in prison].

PCRA Court Opinion, 10/15/18, at 1-2 (footnote added). Irizarry did not file any post-sentence motions. This Court affirmed a direct appeal of Irizarry's judgment of sentence. *See Commonwealth v. Irizarry*, 797 A.2d 373, (Pa. Super. 2002) (unpublished memorandum). Irizarry did not seek allowance of appeal. Thereafter, Irizarry filed several unsuccessful PCRA Petitions.

On May 29, 2018, Irizarry filed the instant Motion, contending that if hair samples allegedly in the possession of the Lancaster Bureau of Police were tested for DNA, the results would prove his innocence. The Commonwealth filed a Response to Irizarry's Motion, stating that the alleged hair evidence does not exist. The PCRA court, after appropriate notice, subsequently dismissed Irizarry's Motion without a hearing. Irizarry filed a timely appeal and a Pa.R.A.P. 1925(b) Concise Statement.

Irizarry raises the following, sole issue for our review:

1. [Did] [t]he lower court abuse[] its discretion when it dismissed the Motion for DNA testing that was filed under 42 Pa.C.S.A. § 9543.1[,] [where] [Irizarry] filed the Motion for DNA testing of hairs that were previously tested by a microscopic testing method now found to be unreliable by the [Federal Bureau of Investigation] and the [United

States Department] of Justice[,] [and where] [Irizarry] filed the Motion for DNA testing of those hairs[?]

Brief for Appellant at 3.

We review an order denying a motion for post-conviction DNA testing as follows:

[T]he [PCRA] court's application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law. When reviewing an order denying a motion for post-conviction DNA testing, this Court determines whether the movant satisfied the statutory requirements listed in Section 9543.1 [of the PCRA]. We can affirm the court's decision if there is any basis to support it, even if we rely on different grounds to affirm.

**Commonwealth v. Williams**, 35 A.3d 44, 47 (Pa. Super. 2011) (internal citations omitted).

As we explained in **Williams**, **supra**,

[Section 9543.1] sets forth several threshold requirements to obtain DNA testing: (1) the evidence specified must be available for testing on the date of the motion; (2) if the evidence was discovered prior to the applicant's conviction, it was not already DNA tested because (a) technology for testing did not exist at the time of the applicant's trial; (b) the applicant's counsel did not request testing in a case that went to verdict before January 1, 1995; [] (c) [the evidence was subject to the testing, but newer technology could provide substantially more accurate and substantially more probative results]; or [(d)] counsel sought funds from the court to pay for the testing because his client was indigent, and the court refused the request despite the client's indigency. Additionally, … [u]nder [S]ection 9543.1(c)(3), the petitioner is required to present a *prima facie* case that the requested DNA testing, assuming it gives exculpatory results, would establish the petitioner's actual innocence of the crime. Under [S]ection 9543.1(d)(2), the court is directed not to order the testing if it determines, after review of the trial record, that there is no reasonable possibility that the testing would produce exculpatory evidence to establish [the] petitioner's actual

- 3 -

innocence. From the clear words and plain meaning of these provisions, there can be no mistake that the burden lies with the petitioner to make a *prima facie* case that favorable results from the requested DNA testing would establish his innocence. We note that the statute does not require [the] petitioner to show that the DNA testing results would be favorable. However, the court is required to review not only the motion for DNA testing, but also the trial record, and then make a determination as to whether there is a reasonable possibility that DNA testing would produce exculpatory evidence **that would establish petitioner's actual innocence**. We find no ambiguity in the standard established by the legislature with the words of this statute.

*Id.* at 49-50 (citation omitted; emphasis in original).

In his brief, Irizarry baldly asserts that he complied with all requirements of Section 9543.1(c), and, therefore, is entitled to relief. Brief for Appellant at 9. However, our review of the record discloses that Irizarry failed to make the requisite showing that the results of the testing would establish his innocence. To this point, we agree with the sound reasoning of the PCRA court:

Hair evidence played no role in Irizarry's conviction and was clearly not an issue at trial.[6] The Lancaster Bureau of Police and the District Attorney's Office have confirmed that they are not presently in possession of any hair evidence pertaining to this case, nor have they ever been in possession of hair evidence. Hair samples simply never factored into this case as evidenced by a thorough review of the record.

Even assuming, *arguendo,* that the hair evidence existed, Irizarry failed to satisfy the *prima facie* requirements set forth in [Section] 9543.1 necessary to entitle him to the requested DNA testing. The PCRA statute [states that] … "DNA testing 'shall not' be ordered by the PCRA court if there is 'no reasonable possibility that the testing would produce exculpatory evidence' that 'would establish ... actual innocence of the offense for which the applicant was convicted.'" **In re Payne,** 129 A.3d 546, 555-56 (Pa. Super. 2015). Irizarry claims that DNA testing of alleged hair evidence

- 4 -

will establish his actual innocence of the attempted murder for which he was convicted. This bald assertion is entirely [without merit,] as it would require this [c]ourt to ignore the overwhelming evidence of his guilt and conclude that DNA testing would have changed the jury's verdict. At trial, the Commonwealth presented over half a dozen eye-witnesses who positively identified Irizarry as the shooter. *See*, [*e.g.*], N.T., Trial, Vol. 1 at 84; Vol. 2 at 258, 304, 326; Vol. 3 at 359-60, 38 1-82, 388. Additionally, Irizarry, when captured just moments after the shooting, was still in possession of the rifle used to shoot the officer. *Id.* at Trial, Vol. 3 at 387-88, 394-95. It is evident that even a perfunctory review of the overwhelming evidence of guilt in the present case reveals that there is no reasonable possibility that the testing requested would produce exculpatory evidence that would establish lrizarry's actual innocence in this case[,] as required by [S]ection 9543.1.

> [FN 6] The word "hair" is used exactly three times during lrizarry's four-day trial. The first mention is by an eye-witness, Iris Bello, who twice referred to the shooter as having "short hair." N.T., Vol. 2 at 154, 156. The only other reference to the word "hair" was in the prosecutor's closing statement to the jury. When discussing the fact that the shooter consciously fired [multiple] rounds from the assault rifle at a police officer[,] which required six and three-quarter pounds of pressure to pull the trigger, the assistant district attorney noted this was not a "hair" trigger situation. *Id.* at Vol.4 at 654.

PCRA Court Opinion, 10/15/18, at 5-6 (footnote in original).

Accordingly, we discern no error or abuse of discretion by the PCRA court and conclude that the PCRA court properly dismissed Irizarry's Motion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/16/2019