J-S60025-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAYNE PATRICK FLOOD | : | |
| | : | |
| Appellant | : | No. 1963 MDA 2017 |

Appeal from the Order Entered November 29, 2017
In the Court of Common Pleas of Bradford County Criminal Division at
No(s):  CP-08-CR-0001997-1983

BEFORE: SHOGAN, J., NICHOLS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY NICHOLS, J.:  **FILED NOVEMBER 14, 2018**

Appellant Shayne Patrick Flood appeals *pro se* from the order denying his motion for DNA testing pursuant to Section 9543.1 of the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Appellant argues that the court abused its discretion in denying his motion because the results of the requested DNA test would purportedly establish his absence from the crime scene and, in turn, his innocence.  We affirm.

On September 7, 1983, a jury convicted Appellant of second-degree murder, robbery, and several related felonies in connection with the 1979 killing of Leslie Parker, Sr. (Victim).  Appellant was subsequently sentenced to a term of life imprisonment.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Thirty-four years later, Appellant filed a motion for DNA testing of the murder scene, which was docketed by the court on September 6, 2017. *See* Appellant's Mot. for DNA Testing, 9/6/17. Appellant argued that a DNA test would establish that an unknown assailant was present at the scene of the murder. *Id.* at 2. Additionally, Appellant claimed that the test would exonerate him from the murder, as it would prove that he was not at the scene and "was not one of the assailants that . . . confront[ed], assault[ed], and struggle[d] with [Victim]." *Id.* at 6.

On November 29, 2017, the PCRA court denied Appellant's motion, stating:

1. While DNA theoretically could establish that one or more individuals other than [Appellant] and his co-defendant were present at the scene of the murder, such evidence would not also establish that [Appellant] was not there.

2. A motion for post-conviction DNA testing must plead a *prima facie* case that DNA testing would establish the "actual innocence" of the applicant. 42 Pa.C.S.A. § 9543 1(c)(3)(ii)(A).

3. The absence of DNA proves nothing.

PCRA Ct. Order, 11/29/17.

The PCRA court docketed Appellant's timely notice of appeal on December 19, 2017. On January 10, 2018, the PCRA court ordered Appellant to file a concise statement pursuant to Pa.R.A.P. 1925. Appellant's statement was docketed on January 25, 2018. On June 28, 2018, the PCRA court entered its 1925(a) opinion.

Appellant's sole question on appeal is, "[d]id the [PCRA] court abuse its discretion when it denied [Appellant's] motion for DNA testing?" Appellant's Brief at 7 (full capitalization omitted). In support, he argues that DNA testing would establish that he was "not one of the individuals who struggled with the victim during the robbery and eventual[ly] murder[ed] the victim." *Id.* at 13. He claims that "[t]he DNA tests would have proved negative regarding the Appellant, but would have produced the DNA of a previously unknown assailant." *Id.*

We note that post-conviction DNA testing falls under the PCRA,[1] and thus "our standard of review permits us to consider only whether the PCRA court's determination is supported by the evidence of record and whether it is free from legal error." *Commonwealth v. Conway*, 14 A.3d 101, 108 (Pa. Super. 2011) (internal quotation marks, brackets, and citation omitted).

To obtain post-conviction DNA testing under the PCRA, a petitioner must prove the following:

> If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or **the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995**, or the applicant's counsel sought funds from the court to pay for the testing because his client was indigent and the court refused the request despite the client's indigency.

---

[1] It is well settled that a request for DNA testing under Section 9543.1 is not subject to the PCRA time bar. *See Commonwealth v. Williams*, 35 A.3d 44, 50 (Pa. Super. 2011).

42 Pa.C.S. § 9543.1(a)(2) (emphasis added).

Additionally, an individual seeking relief under this statute must present

a *prima facie* case demonstrating that the

> (i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in applicant's conviction and sentencing; and

> (ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:

>> (A) the applicant's actual innocence of the offense for which the applicant was convicted[.]

42 Pa.C.S. § 9543.1(c)(3)(i)-(ii)(A).

Moreover, we note that

> [s]ignificantly, in DNA testing cases, "an absence of evidence is not evidence of absence." ***Commonwealth v. Heilman***, 867 A.2d 542, 547 (Pa. Super. 2005). ***See also*** [***Commonwealth v. Williams***, 35 A.3d 44 (Pa. Super. 2011)] (affirming trial court's denial of DNA testing where appellant failed to meet threshold requirements for DNA testing, under Section 9543.1(a)(2), and did not demonstrate *prima facie* case of "actual innocence"; even if appellant's DNA were not found on hat/wig, record contained overwhelming evidence of appellant's guilt including three unshakable eyewitnesses, appellant's confession, and appellant's access to weapon used in crimes); ***Commonwealth v. Smith***, 889 A.2d 582 (Pa. Super. 2005), *appeal denied*, 588 Pa. 769, 905 A.2d 500 (2006) (affirming denial of request for post-conviction DNA testing where absence of appellant's DNA from victim's fingernails would not establish appellant's innocence of victim's murder; nothing in record supported appellant's claim that victim would have scratched her assailant leaving DNA evidence under her fingernails).

***Commonwealth v. Walsh***, 125 A.3d 1248, 1255 (Pa. Super. 2015).

Initially, we note that because (1) Appellant's case went to verdict before January 1, 1995, and (2) trial counsel did not seek DNA testing at the time of trial, Appellant meets the threshold requirement set forth in Section 9543.1(a)(2). *See* 42 Pa.C.S. § 9543.1(a)(2). Therefore, we next determine whether Appellant presented a *prima facie* case that the testing would produce exculpatory evidence proving his actual innocence. *See* 42 Pa.C.S. § 9543.1(c)(3)(ii)(A).

By way of background, the trial court explained:

At some point in time, it was decided by Dorothy Boettcher and Robert Wheeler that they would try to steal from [Victim], since he carried large amounts of money and had drugs in his home. However, a problem developed because [Victim] knew Wheeler and would be able to identify him. [Dorothy Boettcher]'s ex-husband, Barry Boettcher, [(co-defendant Boettcher)] was contacted in Wisconsin and he agreed to come to Pennsylvania to "rip-off" [Victim]. When [co-defendant Boettcher] arrived from Wisconsin in early October, 1979, [Appellant] was with him. [Appellant] and [co-defendant Boettcher] stayed at the home of Wheeler and Dorothy Boettcher. [Co-defendant Boettcher] and [Appellant] had one gun when they arrived from Wisconsin, a .38 caliber pistol belonging to [Appellant]. Upon arriving in Pennsylvania, [co-defendant Boettcher] accompanied Dorothy Boettcher to a Sporting Goods Store to purchase another weapon, a shotgun. This purchase was made in contemplation of the crime against [Victim].

Trial Ct. Op., 5/21/84, at 3.

At trial, Dorothy Boettcher testified that

on the night before the body was found, [Appellant] and [co-defendant Boettcher] entered the residence of [Victim], after [Dorothy Boettcher] had arrived in Towanda following a drive from Williamsport, Pennsylvania, with [Appellant] and [co-defendant Boettcher]. She testified that, after [Appellant] and [the co-

defendant] left the car to enter [Victim's] house, she remained in the car and heard what she described as a gun shot immediately followed by a gun blast. She testified further that approximately three to five minutes later [Appellant and co-defendant Boettcher] came sliding down an embankment and quickly got into the car. [She also] testified that [Appellant] was carrying a shotgun and that [co-defendant Boettcher] had a .38 caliber pistol in his possession[.]

Mrs. Boettcher testified further that in response to a statement by [the co-defendant], [Appellant] asked [co-defendant Boettcher] what took him so long to fire and [co-defendant Boettcher], as a reply, asked [Appellant] what took him ([Appellant]) so long to react. [Appellant] replied that he reacted "as fast as he could, that he fired the gun as soon as he felt necessary that it was to do so."

Mrs. Boettcher testified that as she was driving the car back to Williamsport a short time later on the same evening, [Appellant] had a wallet with him. [Appellant] stated that the wallet was [Victim's] and that it contained identification, a credit card and some cash. [Appellant] counted the cash and stated that there was approximately $1,400.00.

*Id.* at 4-6 (record citations omitted). Therefore, the testimony at trial established that Appellant and co-defendant Boettcher robbed Victim and during the commission of that robbery, Victim was murdered. ***See id.*** at 5-7.

Instantly, as noted above, the jury found that Appellant and his co-defendant robbed and murdered Victim. ***See id.*** We have carefully reviewed the entire record and the parties' briefs, and agree with the PCRA court's conclusion that "the presence of DNA from other, unidentified third parties, even if coupled with the absence of Appellant's DNA would not exculpate Appellant," and that "[t]he absence of DNA evidence would mean only that the police did not find Appellant's DNA at the scene." PCRA Ct. Op., 6/28/18,

at 1; **see Walsh**, 125 A.3d at 1255.  Moreover, even if the results of the requested DNA test positively identified **another** individual's DNA, Appellant did not explain how that would exonerate him from his crimes.[2]  **See Walsh**, 125 A.3d at 1252.  We agree with the PCRA court that Appellant has failed to meet his *prima facie* burden under Section 9543.1, and thus, the PCRA court did not err in denying his motion for post-conviction DNA testing.  Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/14/2018

---

[2] To the extent Appellant argues that if he were one of the assailants, then his DNA would be at the crime scene because there was a "violent struggle" between Victim and his assailants, we find no support in the record for this contention.  **See** Appellant's Mot. for DNA Testing, 9/6/17, at 2; **see Walsh**, 125 A.3d at 1255.  The record does not indicate that any type of struggle occurred prior to Victim's murder.