J-S24034-20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| GREGORY MARTINEZ, | : | |
| | : | |
| Appellant | : | No. 1371 EDA 2019 |

Appeal from the PCRA Order Entered April 16, 2019
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0207821-1988

BEFORE:    BENDER, P.J.E., STABILE, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:          **FILED AUGUST 07, 2020**

Gregory Martinez (Appellant) appeals *pro se* from the order entered on April 16, 2019, dismissing his motion for post-conviction DNA testing filed pursuant to section 9543.1 of the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Upon review, we affirm.

This Court has previously provided the following factual summary.

> On May 12, 1997, Jerry Morris[], a used-car dealer, allowed [A]ppellant to borrow a gold-colored Plymouth to show to a potential buyer; [A]ppellant occasionally sold cars for Morris. While having lunch later that day, [A]ppellant encountered John Reese [(Victim)], to whom he had sold a car transmission two years earlier. [Victim] complained about the transmission and demanded his money back. Appellant refused to refund the money, and the verbal argument escalated into a fistfight. Appellant left the restaurant [in his car] and vowed to return for [Victim]. Moments later, [A]ppellant came back in the gold Plymouth and shot [Victim].

* * *

_____
*Retired Senior Judge assigned to the Superior Court.

During the investigation… Morris… spoke to the police, stating that [A]ppellant had been to see him on the night of the murder and [Appellant] had stated that he killed [Victim].

***Commonwealth v. Martinez***, 897 A.2d 520 (Pa. Super. 2006) (unpublished memorandum at 1-2).

Based on the foregoing, Appellant was charged with first-degree murder, possessing an instrument of crime, and carrying a firearm without a license. On March 18, 1999, Appellant proceeded to a jury trial. The Commonwealth presented, *inter alia*, Morris' testimony, as well as testimony from two eyewitnesses who observed Appellant shoot Victim. One of those eyewitnesses was Teresca Cherry, who

was nearby when the shooting occurred[. She stated that Appellant], whom she had known for a long time as Chop, and [Victim] got into a fight. As the fighting ended, Cherry heard [Appellant] say, "I'll be back." Cherry testified that she then saw [Appellant] get into a beige[-]colored car[1] and drive away. A few minutes later, [Appellant] returned, walked up to the victim, and shot him twice. Cherry… saw [Appellant] get back in the beige car and drive north on Lancaster [Street]. Officer Lorenzo Walker… testi[fied ]that he saw [Appellant] shoot the victim. After sending out a bulletin, Officer Walker pursued [Appellant] as he fled the scene in a beige colored Plymouth Reliant. Officer Walker followed the vehicle down Lancaster [Street] to Sloan Street.

***Commonwealth v. Martinez***, 764 A.2d 1125 (Pa. Super. 2000) (unpublished memorandum at 1-2). Officer Walker lost sight of Appellant

---

[1] Throughout trial, the car was interchangeably referred to as gold and beige. Because Appellant abandoned the vehicle and escaped on foot down an alley, the identification of the car used to flee the shooting was not at issue. ***Martinez***, 897 A.2d 520 (unpublished memorandum at 2).

after Appellant jumped out of the Plymouth and ran down an alley.
*Martinez*, 897 A.2d 520 (unpublished memorandum at 2).

A second law-enforcement officer placed Appellant near the scene of
the murder, and a third officer saw the Plymouth Reliant speed away from
Victim after the shooting.

> Officer Anthony Winbush testified that, near the time of
> the shooting, he was traveling on Sloan Street, a narrow side
> street, when he pulled onto the curb to let another car pass. The
> car was driven by [Appellant]. As it passed, both men looked at
> each other. Officer Winbush testified that he had known
> [Appellant] and his family for several years.…
>
> Shortly before the shooting, Officer Samuel McClain, who
> was off duty, was driving toward Lancaster [Street] to meet with
> Officer Winbush when Officer McClain heard a gunshot. A few
> seconds later, he observed a beige Reliant drive by him in the
> opposite direction at a high rate of speed. A few moments later,
> Officer McClain saw a marked police car with its lights flashing
> speed by him. As Officer McClain approached 40th and Lancaster
> [Streets], he saw people taking items off of a body that was
> resting on the ground. He stopped his car and approached the
> body. Upon turning the body over, Officer McClain observed that
> the victim[] had been shot. [Victim] died shortly thereafter.

*Martinez*, 764 A.2d 1125 (unpublished memorandum at 2).

Finally, the Commonwealth presented evidence that Appellant's palm
print was found on the Plymouth Reliant, and .32 caliber Smith and Wesson
bullets recovered from Victim's body were similar to .32 caliber cartridges
seized from Appellant's residence. *Id.* (unpublished memorandum at 3).

On March 23, 1999, the jury convicted Appellant of first-degree
murder, possessing an instrument of crime, and carrying a firearm without a
license. Appellant was sentenced to life imprisonment without the possibility

of parole for murder and concurrent sentences of two to four years of imprisonment on the remaining charges. Appellant filed a direct appeal. This Court affirmed Appellant's judgment of sentence on August 7, 2000, and our Supreme Court denied his petition for allowance of appeal on January 31, 2001. ***Id.,*** *appeal denied*, 766 A.2d 1245 (Pa. 2001). Appellant's first PCRA petition was timely filed on September 13, 2001, and dismissed by the PCRA court. We affirmed the PCRA court's dismissal, and our Supreme Court denied *allocatur*. ***Martinez***, 897 A.2d 520, allocatur denied, 911 A.2d 934 (Pa. 2006).

Appellant filed his second PCRA petition on May 14, 2012, amended on August 16, 2012.[2] On March 14, 2018, Appellant *pro se* filed the instant motion for post-conviction DNA testing of clothing worn by Victim. Appellant's Motion for DNA Testing, 3/14/2018, at 3. The Commonwealth filed a motion to dismiss Appellant's second PCRA petition and motion for DNA testing on January 16, 2019, to which Appellant responded on February 13, 2019.[3] The PCRA court sent Appellant a notice of intent to dismiss his

---

[2] The PCRA Court's opinion states that Appellant "filed an amended petition" on August 16, 2012 and discusses exclusively the content of Appellant's August 2012 filing, however a review of the record does not indicate whether Appellant had leave to amend his May 14, 2012 petition. See PCRA Court Opinion, 10/24/2019, at 3, 4-7.

[3] The Commonwealth's motion to dismiss covers both Appellant's 2012 PCRA petition and 2018 motion for DNA testing, erroneously stating that they were filed together on May 14, 2012. Commonwealth Motion to Dismiss, 1/16/2019, at 7. No explanation appears in the record for the more than six

*(Footnote Continued Next Page)*

- 4 -

PCRA petition pursuant to Pa.R.Crim.P. 907 on March 18, 2019. Appellant responded on April 8, 2019. On April 16, 2019, the PCRA court dismissed Appellant's PCRA petition as untimely filed and without merit and denied his motion for DNA testing.

Appellant timely filed a notice of appeal from the denial of his motion for DNA testing.[4]

Appellant raises the following issue on appeal.

> Appellant's... petition to have DNA testing was denied without a hearing, which deprived Appellant of due process and caused a miscarriage of justice. The lower court abused it[]s discretion and was in error of the law, as the ruling was contrary to the statute, and was not supported by the record.

Appellant's Brief at 8 (unnumbered)[5] (some capitalization omitted).[6]

_____

*(Footnote Continued)* ————————

year delay in addressing Appellant's 2012 PCRA petition. We do not condone such extreme delays. Our Supreme Court has made clear that "[t]he PCRA court [has] the ability and responsibility to manage its docket and caseload and thus an essential role in ensuring the timely resolution of PCRA matters." ***Commonwealth v. Renchenski***, 52 A.3d 251, 260 (Pa. 2012). However, we need not address this delay further as Appellant's responses to the Commonwealth's motion to dismiss and subsequent filings exclusively contest the dismissal of his 2018 motion for DNA testing, and not his 2012 PCRA petition.

[4] The PCRA court complied with Pa.R.A.P. 1925(a). It did not order a Pa.R.A.P. 1925(b) statement and none was filed.

[5] Appellant purports to hand-number his brief; however it is difficult to follow; so we have renumbered for ease of reference.

[6] Insofar as Appellant argues tangentially that he was not afforded counsel, we note that section 9543.1 does not confer a right to counsel. ***Commonwealth v. Williams***, 35 A.3d 44, 50 (Pa. Super. 2011).

"Post[-]conviction DNA testing falls under the aegis of the... PCRA, and thus, our standard of review permits us to consider only whether the PCRA court's determination is supported by the evidence of record and whether it is free from legal error." **Commonwealth v. Kunco**, 173 A.3d 817, 823 (Pa. Super. 2017) (original brackets omitted) (quoting **Commonwealth v. Conway**, 14 A.3d 101, 108 (Pa. Super. 2011)).

The post-conviction DNA testing statute permits "[a]n individual convicted of a criminal offense in a court of this Commonwealth" to apply by "written motion to the sentencing court at any time for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction." 42 Pa.C.S. § 9543.1(a)(1). "DNA testing may be sought at any time if the motion is made in a timely manner and for the purpose of demonstrating the applicant's actual innocence and not to delay the execution of sentence or administration of justice." 42 Pa.C.S. § 9543.1(a)(4).

**(c) Requirements.--**In any motion under subsection (a), under penalty of perjury, the applicant shall:

\*\*\*

(3) present a *prima facie* case demonstrating that the:

(i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and

> > (ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:
>
> > > (A) the applicant's actual innocence of the offense for which the applicant was convicted[.]
>
> > > \*\*\*
>
> **(d) Order.--**
>
> > \*\*\*
>
> > (2) The court shall not order the testing requested in a motion under subsection (a) if, after review of the record of the applicant's trial, the court determines that there is no reasonable possibility that the testing would produce exculpatory evidence that:
>
> > > (i) would establish the applicant's actual innocence of the offense for which the applicant was convicted[.]

42 Pa.C.S. § 9543.1.

"[O]n its face, the *prima facie* requirement set forth in § 9543.1(c)(3) and reinforced in § 9543.1(d)(2) requires that an appellant demonstrate that there is a reasonable possibility[] that favorable results of the requested DNA testing would establish the appellant's actual innocence of the crime of conviction." **Conway**, 14 A.3d at 109 (internal quotation marks omitted). In order for new evidence resulting from DNA testing to establish "actual innocence," it "must make it 'more likely than not that no reasonable juror would have found [the appellant] guilty beyond a reasonable doubt.' Thus, this standard requires a reviewing court 'to make a probabilistic determination about what reasonable, properly instructed jurors would do,' if

presented with the new evidence." ***Conway***, 14 A.3d at 109 (quoting ***Schlup v. Delo***, 513 U.S. 298, 327, 329 (1995)). Accordingly, the PCRA court must "review not only the motion [for DNA testing], but also the trial record, and then make a determination as to whether there is a reasonable possibility that DNA testing would produce exculpatory evidence that would establish … actual innocence." ***Commonwealth v. Williams***, 35 A.3d 44, 50 (Pa. Super. 2011) (quoting ***Commonwealth v. Smith***, 889 A.2d 582, 584 (Pa. Super. 2005)).

In his motion for DNA testing, Appellant argued he was entitled to have Victim's shirt, sweatshirt, and jacket tested for "DNA, blood, hair[,] and any fibers that would reveal [an]other persons' DNA besides the deceased." Appellant's Motion, 3/14/2018, at 3. Through a string of inferences, he posits that blood on Victim's shirt could exonerate him by showing that someone else committed the murder. ***Id.*** at 2. First, Appellant maintains that he is innocent, and his DNA would not be found on Victim. ***Id.*** Next, Appellant states that the "struggle and … fight" preceding the shooting put Victim and his attacker "in very close contact" such that it is reasonable to believe blood from the attacker would have gotten on Victim's clothing. ***Id.*** at 2. He then endorses "the testimony explain[ing that] the man who fought [Victim] is the same person who came back and shot [Victim]." ***Id.*** Therefore, Appellant reasons that blood on Victim's shirt "could be of both parties, the shooter and the deceased." ***Id.*** As a result, Appellant concludes

DNA testing may result in identifying the shooter and exonerating Appellant. *Id.* at 3.

In denying Appellant's motion, the PCRA court found that Appellant failed to make out a *prima facie* case pursuant to § 9543.1(c)(3). PCRA Court Opinion, 10/24/2019, at 10. The PCRA court determined that, given the "overwhelming[]" evidence establishing Appellant's responsibility for the murder, neither the absence of his DNA nor the presence of another person's DNA would establish Appellant's actual innocence. *Id.*

On appeal, Appellant asserts that the PCRA court "failed to understand that eyewitness testimony … is unreliable and most damaging to a fair trial because of misidentification." Appellant's Brief at 7 (unnumbered). Appellant relies on *Conway* to argue he has presented a *prima facie* case that, assuming exculpatory results, DNA testing would resolve the purported misidentification and reveal the actual murderer based upon *Conway's* data bank theory and confession theory. *Id.* at 10-11 (unnumbered) (citing *Conway*, 14 A.3d at 110; *In re Payne*, 129 A.3d 546 (Pa. Super. 2015)). Taken together, the data bank and confession theories postulate that if DNA testing yields DNA of an unknown person, it "could be run through state and federal data banks for a match." *Conway*, 14 A.3d at 110. If the data bank search finds a match, the identified person could be confronted with the results and choose to confess. *Id.* Appellant concludes that, applying the theories to his case, "[t]he blood may reveal the real killer. The killer may

also confess to the crime.… The DNA would reveal that Appellant is actually innocent of the crimes charged." Appellant's Brief at 10-11 (unnumbered).

Appellant's comparison to **Conway** and **Payne** is inapt.[7] Motions for DNA testing are evaluated on a case-by-case basis; the data bank and confession theories are not universally applicable or exculpatory. **Payne**, 129 A.3d at 559-60, 564. Here, rather than exonerate Appellant, the detection of multiple DNA profiles on Victim's clothing is consistent with the evidence adduced at trial. First, although Appellant's argument focuses on blood, we note that his broad request for testing any source of DNA would have no exculpatory value. **See** Appellant's Motion, 3/14/2018, at 3. In addition to Victim's encounters prior to the shooting and while receiving medical care, Officer McClain observed multiple people come in contact with Victim's clothing while removing items from the body. Moreover, the mere absence of Appellant's DNA cannot establish actual innocence. **See Smith**, 889 A.2d at 585 ("Merely detecting DNA from another individual on the victim's fingernails, in the absence of any evidence as to how and when that

---

[7] In **Payne**, we held that detection of another person's DNA could be exculpatory where no physical evidence linked the appellant to the murder; the conviction was based on testimony from two jailhouse informants and one other witness claiming the appellant confessed to them; and testing was sought for specific, inherently inculpatory items such as a pubic hair. **Payne**, 129 A.3d at 564. In **Conway**, we found that DNA testing was warranted where Conway was convicted based on circumstantial evidence and no prior relationship existed between Conway and the victim to suggest a motive. **Conway**, 14 A.3d at 109.

DNA was deposited, would not exculpate appellant by pointing to a different assailant.").

Appellant has not demonstrated that there is a reasonable possibility the presence of another person's blood on Victim's clothing, and/or the absence of Appellant's, would establish his actual innocence. The Commonwealth's case did not rely on proving that the assailant and Victim's fight caused either party to bleed, that the assailant came in such close contact with Victim that blood would inevitably transfer, or that the assailant bled on Victim. As such, new evidence showing someone else's blood came into contact with Victim's body or clothing, but Appellant's blood did not, would not disprove or outweigh the most salient evidence introduced at trial. At trial, a law enforcement officer and a person who knew Appellant for years testified that they saw Appellant shoot Victim.[8] Two more law enforcement officers placed Appellant near the crime scene, fleeing in the Plymouth Reliant. Finally, Appellant does not challenge the evidence that he drove the Plymouth Reliant used to flee the scene, confessed the murder to Morris, and possessed ammunition consistent with the bullets used to kill Victim. Thus, even if DNA evidence favorable to Appellant had been

_____

[8] Notwithstanding Appellant's bald proclamation that eyewitness accounts are generally unreliable, we note that Appellant's theory for the transfer of the shooter's DNA onto Victim's clothing relies on his selective endorsement of eyewitness testimony. Appellant's Reply Brief at 1 ("[I]t was the Commonwealth's witness [Cherry] that presented a *prima facie* case that DNA testing is needed" by testifying to the fight between Appellant and Victim.).

introduced at trial, it is not probable that any reasonable juror would have found Appellant not guilty.

As Appellant has failed to meet his *prima facie* burden under § 9543.1(c)(3), we find that the PCRA court did not err in denying Appellant's motion for post-conviction DNA testing. Accordingly, we affirm the PCRA court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/7/20