J-A15036-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN BROOKINS | : | |
| | : | |
| Appellant | : | No. 551 EDA 2020 |

Appeal from the PCRA Order Entered January 14, 2020
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0005060-1991

BEFORE:   LAZARUS, J., KING, J., and STRASSBURGER, J.*

MEMORANDUM BY KING, J.:                    **FILED OCTOBER 27, 2020**

Appellant, John Brookins, appeals from the order entered in the Bucks

County Court of Common Pleas, which denied his motion for DNA testing

pursuant to Section 9543.1 of the Post Conviction Relief Act ("PCRA").[1]   We

affirm.

This Court has previously set forth the relevant facts and procedural

history of this case as follows:

> On July [17], 1992, a jury convicted Appellant of first-
> degree murder.  Appellant's conviction stemmed from the
> December 20, 1990 killing of [Victim], the mother of
> Appellant's girlfriend, Sharon….   [Victim]'s body was
> discovered "lying partially on the couch [in her apartment]
> with a pair of large scissors embedded in her chest."  An
> autopsy revealed that [Victim] was not only stabbed in the

---

* Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-9546

chest, but also had "eight significant internal injuries, including skull penetration consistent with an object such as scissors, protruding wounds, and bone fractures." The forensic pathologist further stated that [Victim]'s hyoid bone had been broken, opining that she had likely been strangled.

Several of Appellant's fingerprints were discovered at the scene, including a bloody print on a television remote control found near [Victim]'s body. Additionally, letters written between [Victim] and Appellant were found in the apartment and indicated that the two had a romantic relationship. The letters also evinced that Appellant and [Victim] had also recently quarreled about money. When Appellant was interviewed by police after the murder, he gave varying accounts of what occurred on the night [Victim] was killed. For instance, while he initially denied seeing [Victim] the night she died, after being arrested and confronted with the fingerprint evidence, Appellant admitted that he had been inside [Victim]'s apartment the night of the murder, but claimed that he left for a short time and returned later to find her dead. He told police that he touched [Victim]'s body, got blood on his hands, and then touched several objects in the apartment, such as the phone. However, he denied touching the television remote control.

Appellant was charged with murder and proceeded to a jury trial, where he attempted to convince the jury that Sharon...murdered her mother. However, the jury rejected Appellant's version of events and convicted him of first-degree murder on July 17, 1992. Following a penalty hearing, Appellant was sentenced to life imprisonment. He filed a timely notice of appeal with this Court, and after we affirmed his judgment of sentence, our Supreme Court denied his subsequent petition for permission to appeal.

On January 18, 2000, Appellant filed a *pro se* PCRA petition and counsel was appointed. At this point, the procedural history of Appellant's case becomes tortuous, to say the least, and we decline to reproduce the specifics herein. Instead...it is only necessary to explain that for various reasons—including the apparent carelessness of the court— the litigation of Appellant's PCRA petition did not commence until the Honorable Rea B. Boylan of the Court of Common

Pleas of Bucks County took over his case on November 24, 2008. While Judge Boylan attempted to conduct a PCRA hearing shortly thereafter, due to continuance requests and other filings by the parties, Judge Boylan was only able to conduct a partial PCRA hearing on July 1, 2009, and did not complete that proceeding until June 15, 2011. We also note that in the meantime, on October 29, 2010, Appellant filed a "Motion to Subject Seized Gloves for [DNA] Testing," which the court denied on April 27, 2011. On June 27, 2012, the court also denied Appellant's PCRA petition.

Appellant filed a notice of appeal to this Court on July 23, 2012. …

*Commonwealth v. Brookins*, No. 2118 EDA 2012, at 1-4 (Pa.Super. filed Sept. 5, 2013) (unpublished memorandum). This Court affirmed the denial of PCRA relief on September 5, 2013, and our Supreme Court denied allowance of appeal on March 24, 2014.

On June 27, 2019, Appellant filed through counsel the current petition seeking DNA testing, per Section 9543.1 of the PCRA, of nineteen pieces of evidence collected by law enforcement in connection with Victim's murder.[2] The PCRA court issued notice of its intent to dismiss the petition, pursuant to

---

[2] The PCRA court lists the items as follows: "The nineteen (19) items that Appellant has requested DNA testing be performed upon include [Victim]'s pants, shirt, bra, and sweater; two white sheets used to transport [Victim]'s body; scissors embedded in [Victim]'s chest; [Victim]'s ten fingernail scrapes; scissors recovered from under the coffee table; metal trophy piece; metal trophy base; [Victim]'s blood sample; a 10' x 10' piece of carpet; "[scraping] from [ceiling] chase…;" blood residue from scrapings of bloodstain on floor; gloves seized from Paul Cottman's car; [Victim]'s white purse; all the non-Negroid hairs or hair fragments removed from [Victim]'s clothing, the white sheets, the carpet and sofa cushions; and Sharon's hair samples." (PCRA Court Opinion, filed February 25, 2020, at 6 n. 5).

- 3 -

Pa.R.Crim.P. 907, on September 25, 2019, and denied the petition on January 14, 2020. On January 27, 2020, Appellant filed a timely notice of appeal and a voluntary concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises two issues on appeal:

> [Whether] the PCRA court erred…when it concluded [Appellant]'s DNA testing motion is untimely[?]

> [Whether] the PCRA court erred when it said there was no reasonable probability modern DNA testing could produce exculpatory results that would prove [Appellant]'s actual innocence[?]

(Appellant's Brief at 1).

In his first issue on appeal, Appellant argues the PCRA court erred in concluding that his DNA testing motion was untimely under Section 9543.1(d)(1)(iii) and *Commonwealth v. Edmiston*, 619 Pa. 549, 65 A.3d 339 (2013), *cert. denied*, 571 U.S. 1026, 134 S.Ct. 639, 187 L.Ed.2d 423 (2013).[3] Appellant contends the instant case is factually distinguishable from *Edmiston* where, *inter alia*, Appellant is not on death row, Appellant has filed only a single PCRA petition, and Appellant's PCRA counsel failed to "vigorously" represent him. Appellant further maintains the PCRA court did not "assume

---

[3] Our Supreme Court recently overruled *Edmiston* on grounds unrelated to DNA testing. *See Commonwealth v. Small*, ___ A.3d ___, 2020 WL 5833781 (Pa. filed October 1, 2020) (expressly disavowing public record presumption for purposes of analyzing "newly-discovered fact" exception to PCRA time-bar).

exculpatory results" as Section 9543.1 mandates. Instead, Appellant avers the court presupposed DNA testing would inculpate him based on the "overwhelming" trial evidence. Appellant additionally asserts the Commonwealth would not be prejudiced if DNA testing links Sharon to Victim's murder and requires the Commonwealth to prosecute Sharon and re-prosecute Appellant, as the Commonwealth can utilize the recorded testimony of the witnesses presented at Appellant's trial almost thirty years ago.

In his second issue, Appellant contends the PCRA court erred when it concluded that there was no reasonable probability that DNA testing could produce exculpatory results that would prove Appellant's actual innocence. Rather, Appellant insists that if Sharon's DNA is discovered on two or more of the items he requested for testing, it is "more likely than not" that a jury would not have convicted him of first-degree murder. Appellant maintains that such DNA evidence, coupled with the testimony of the six women who said Sharon confessed to murdering Victim, would have destroyed the Commonwealth's theory that Appellant murdered Victim alone. Appellant concludes this Court should vacate the PCRA court's order and remand with instructions that DNA testing be conducted. We disagree.

Our standard of review in this case is as follows:

> Generally, the trial court's application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law. When reviewing an order denying a motion for post-conviction DNA testing, this Court determines whether the movant satisfied the statutory requirements listed in Section

9543.1. We can affirm the court's decision if there is any basis to support it, even if we rely on different grounds to affirm.

*Commonwealth v. B. Williams*, 35 A.3d 44, 47 (Pa.Super. 2011), *appeal denied*, 616 Pa. 467, 50 A.3d 121 (2012) (internal citations and quotation marks omitted).

Requests for post-conviction DNA testing are governed by statute at 42 Pa.C.S.A. § 9543.1, which provides in pertinent part:

**§ 9543.1.  Postconviction DNA testing**

**(a) Motion.–**

(1)   An individual convicted of a criminal offense in a court of this Commonwealth may apply by making a written motion to the sentencing court at any time for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

(2)   The evidence may have been discovered either prior to or after the applicant's conviction.  The evidence shall be available for testing as of the date of the motion. If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995, or the evidence was subject to the testing, but newer technology could provide substantially more accurate and substantially probative results, or the applicant's counsel sought funds from the court to pay for the testing because his client was indigent and the court refused the request despite the client's indigency.

*        *        *

**(c) Requirements.–**In any motion under subsection (a),

under penalty of perjury, the applicant shall:

(1)(i) specify the evidence to be tested;

(ii) state that the applicant consents to provide samples of bodily fluid for use in the DNA testing; and

(iii) acknowledge that the applicant understands that, if the motion is granted, any data obtained from any DNA samples or test results may be entered into law enforcement databases, may be used in the investigation of other crimes and may be used as evidence against the applicant in other cases.

(2)(i) in a sworn statement subject to the penalties under 18 Pa.C.S. §§ 4902 (relating to perjury) and 4903 (relating to false swearing), assert the applicant's actual innocence of the offense for which the applicant was convicted and that the applicant seeks DNA testing for the purpose of demonstrating the applicant's actual innocence; and

* * *

(3)  present a *prima facie* case demonstrating that the:

(i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and

(ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:

(A)  the applicant's actual innocence of the offense for which the applicant was convicted;

* * *

**(d) Order.–**

(1)  Except as provided in paragraph (2), the court shall order the testing requested in a motion under subsection (a) under reasonable conditions designed to preserve the

integrity of the evidence and the testing process upon a determination, after review of the record of the applicant's trial, that the:

(i) requirements of subsection (c) have been met;

(ii) evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been altered in any material respect; and

(iii) motion is made in a timely manner and for the purpose of demonstrating the applicant's actual innocence and not to delay the execution of sentence or administration of justice.

(2) The court shall not order the testing requested in a motion under subsection (a) if, after review of the record of the applicant's trial, the court determines that there is no reasonable possibility for an applicant under State supervision, or there is no reasonable probability for an applicant not under State supervision, or after review of the record of the applicant's guilty plea, the court determines that there is no reasonable probability, that the testing would produce exculpatory evidence that:

(i) would establish the applicant's actual innocence of the offense for which the applicant was convicted;

\*　　\*　　\*

42 Pa.C.S.A. § 9543.1(a), (c)(1)(i)-(iii), (c)(2)(i), (c)(3)(i)-(ii)(A), (d)(1)(i)-(iii), (d)(2)(i).

Thus,

The text of the statute set forth in Section 9543.1(c)(3) and reinforced in Section 9543.1(d)(2) requires the applicant to demonstrate that favorable results of the requested DNA testing would establish the applicant's actual innocence of the crime of conviction. The statutory standard to obtain testing requires more than conjecture or speculation; **it demands a *prima facie* case that the DNA results, if exculpatory, would establish actual innocence.**

*Commonwealth v. Walsh*, 125 A.3d 1248, 1254-55 (Pa.Super. 2015) (quoting *B. Williams, supra*). "If, after reviewing the record of petitioner's trial, the court determines that there is 'no reasonable possibility that the [DNA] testing would produce exculpatory evidence that would establish the [petitioner's] actual innocence,' the court shall not order the testing." *Commonwealth v. Smith*, 889 A.2d 582, 583 (Pa.Super. 2005), *appeal denied*, 588 Pa. 769, 905 A.2d 500 (2006); 42 Pa.C.S.A. § 9543.1(d)(2)(i).

Additionally, this Court has consistently held the one-year jurisdictional time bar of the PCRA does not apply to motions for DNA testing under Section 9543.1. *Commonwealth v. Conway*, 14 A.3d 101, 108 n.2 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011). Nevertheless, our Supreme Court has analyzed the timeliness requirement under Section 9543.1(d)(1)(iii) and explained that when determining timeliness for DNA testing motions, the PCRA court must consider the individual facts of each case. *Edmiston, supra*. In concluding that the defendant in *Edmiston* did not file his request for post-conviction DNA testing in a timely manner, the Court reasoned:

> Although the PCRA court did not make the requisite finding of timeliness, we see no need to remand for the court to do so because, as explained below, our own review of the record and circumstances surrounding [the defendant's] post-conviction DNA testing request leads to the conclusion that this motion was untimely as a matter of law and was forwarded only to delay further the execution of the sentence. Notably, at the time of trial, [the defendant] indicated that he was satisfied with the DNA testing that had

- 9 -

been conducted, and declined further testing. Following conviction, as noted, the postconviction DNA testing provision was enacted on September 8, 2002. Thereafter, [the defendant's] review as of right under the PCRA concluded in 2004…without [his] seeking DNA testing. Moreover, he did not seek such testing as part of his second PCRA petition (which caused his federal *habeas corpus* petition to be held in stasis, thereby causing further delay), or as part of the amendment or supplement to that petition. It was not until after his second PCRA petition was nearing completion that [the defendant] finally sought DNA testing.

[The defendant] has known of the existence of physical evidence he now seeks to test since his trial over twenty years ago. From that time to the present he has been represented by counsel, who knew of the statute, the technology, and the evidence, and who were vigorously pursuing post-conviction relief on his behalf. Under such circumstances, courts should exercise a healthy skepticism when faced with requests for DNA testing.

This is especially true when, as here, careful examination of the record reveals that [the defendant] is not a likely candidate to be exonerated by DNA testing.

*Edmiston, supra* at 579, 65 A.3d at 357.

Instantly, in addressing Appellant's first issue concerning the timeliness of his DNA testing motion, the PCRA court reasoned as follows:

We believe that *Edmiston* is similar and applicable to the instant matter, and despite Appellant's strenuous arguments to the contrary, we have concluded that Appellant is not a likely candidate to be exonerated by DNA testing. For nearly thirty (30) years, Appellant has known of the existence of the items he wishes to be tested, and in fact he submitted a "Motion to Subject Seized Gloves for [DNA] testing" over nine (9) years ago, on October 29, 2010. As noted previously, Judge Boylan denied that motion on June 27, 2012. As Judge Boylan observed, it was only speculation that those gloves may have even been related to the murder of [Victim], and the results of any

testing done on them would be far from sufficient to establish a *prima facie* case of Appellant's actual innocence.

Appellant initially only requested DNA testing of the aforementioned pair of gloves, rather than the list of nineteen (19) items he has identified in his current request for DNA testing. That list now includes, in addition to those gloves once again, the pair of scissors used as the murder weapon. Since Appellant was obviously aware of the availability of DNA testing when he made his initial request to test the gloves, and he was aware that all of the evidence regarding which he now seeks testing was available when he made that request almost a decade ago, he could have presumably identified and requested testing of all items involved in [Victim]'s death that could provide potentially exculpatory evidence, including those scissors, at that time in 2010.

Appellant's request for DNA testing of the gloves, however, had the appearance of a fishing expedition designed solely to sow doubt over his conviction based upon the possible involvement of [Victim]'s daughter, Sharon..., in the murder of her mother, [Victim]. Now, nine years later, Appellant is apparently attempting to expand that fishing expedition, as well as his evolving theory involving the participation of Sharon...in the murder of her mother, by requesting additional items be tested. Obviously, with the passage of time, it may well be difficult and perhaps impossible to ascertain or recreate the circumstances involving the collection and observation of those items sought to be tested.

Although Appellant has been sentenced to incarceration for life without parole, and therefore his request cannot delay the execution of his sentence, we are nevertheless, in accordance with **Edmiston, supra**, extremely skeptical of Appellant's request. Accordingly, we find his request untimely, and apparently made in furtherance of an evolving and unpersuasive theory in support of a claim of actual innocence.

(PCRA Court Opinion at 6-7) (internal footnote omitted). We agree with the

PCRA court's analysis.

- 11 -

The jury convicted Appellant of first-degree murder in 1992. Nearly twenty years later, in 2010, Appellant filed his first motion for DNA testing, listing only a pair of gloves. After the PCRA court denied that motion, Appellant waited another nine years before he filed the current DNA testing motion, listing an additional eighteen items, all of which Appellant has known about for years. Thus, we agree with the PCRA court's determination that Appellant's DNA testing motion is untimely. *See* 42 Pa.C.S.A. § 9543.1(d)(1)(iii); *Edmiston, supra*.

As for Appellant's second issue concerning whether DNA testing would produce exculpatory results, the PCRA court further reasoned:

> In his most current version of the events surrounding the murder of [Victim], Appellant now admits that he was present at the murder scene, but alleges that he observed Sharon…murder her mother. He therefore requests that the nineteen items he has identified in his petition for DNA testing be examined for traces of Sharon's DNA, and/or the absence of his DNA. What is striking about Appellant's request, and what he fails to acknowledge, is that it represents an attempt to cast suspicion upon another individual who may or may not have been involved in [Victim]'s murder, and does absolutely nothing to dispel or repudiate the overwhelming evidence upon which Appellant's guilt and subsequent conviction were based.
>
> *       *       *
>
> Despite the zealous advocacy of Appellant's counsel and his strenuous arguments concerning the recent advancements in DNA testing technology, this [c]ourt is constrained to conclude, based upon review of the factual record, that the requested DNA testing of the nineteen items identified in Appellant's petition will not produce exculpatory evidence that would establish his actual innocence. It is clear that even if the requested testing did produce evidence of

Sharon…'s DNA on those items, as he suggests in his petition and supporting briefs, it would still not be sufficient to dispel or repudiate the evidence…which the jury undoubtedly relied upon when it concluded that Appellant was guilty of First Degree Murder.

In other words, we recognize that if the testing requested by Appellant did produce evidence of Sharon…'s DNA on those particular items, that, in and of itself, would not be sufficient to establish Appellant's actual innocence, or even prove that Sharon…was in fact the murderer. As the Commonwealth observed, it would not be surprising to discover DNA of [Victim]'s daughter on items belonging to [Victim] since it was acknowledged, and expected, that Sharon…frequently visited her mother in her apartment, even if for the sole purpose of extracting money from her for drugs.

It is apparent that Appellant's request for DNA testing is also based upon the presumption that his DNA would be absent from the items he seeks to be tested. The Superior Court of Pennsylvania, however, has routinely held that the absence of the accused's DNA, by itself, cannot satisfy Section 9543.1(d)(2)(i)'s actual innocence standard. We accordingly determined that the absence of Appellant's DNA on the subject items, by itself, would not demonstrate his actual innocence or negate the substantial circumstantial and physical evidence presented at his trial which the jury presumably relied upon in convicting him of [Victim]'s murder.

Appellant's expressed strategy in these post-conviction proceedings has been to attempt to cast doubt upon the jury's verdict and his conviction, with the ultimate objective of achieving a new trial, by suggesting that [Victim]'s daughter was the actual murderer while he coincidentally happened upon the crime scene. He therefore posits that if the jury has been exposed to any such evidence even remotely supporting his theory, then the jury would have been infused with sufficient reasonable doubt to render it incapable of finding him guilty of murder. It is clear, however, that Appellant's theory does not present a *prima facie* case wherein favorable results from the requested DNA testing would establish Appellant's actual innocence.

> Accordingly, we do not find Appellant's DNA proffer to be a sufficient or appropriate basis for granting his request for DNA testing.

(PCRA Court Opinion at 7-10) (internal citations and quotation marks omitted). Again, we agree with the PCRA court's analysis of this issue. Even if testing revealed the presence of Sharon's DNA on the items, that would not necessarily prove Appellant's innocence. Furthermore, a lack of Appellant's DNA would not prove his innocence either, given the other evidence presented at trial. Thus, the PCRA court correctly denied Appellant's request for DNA testing, as he failed to present a *prima facie* case of actual innocence. **See** 42 Pa.C.S.A. § 9543.1(c)(3)(ii)(A); **Walsh, supra**; **Smith, supra**. Accordingly, we affirm the order denying Appellant's motion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/27/2020