J-S26001-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| LUIS RAMOS | |
| Appellant | No. 1371 MDA 2020 |

Appeal from the PCRA Order Entered September 22, 2020
In the Court of Common Pleas of Berks County
Criminal Division at No: CP-06-CR-0001319-2013

BEFORE:  STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY STABILE, J.:　　　　　**FILED: NOVEMBER 5, 2021**

Appellant, Luis Ramos, appeals *pro se* from the September 22, 2020 order dismissing his motion for DNA testing pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9543.1.  We affirm.

On March 26, 2014, Appellant pled guilty to third degree murder for the shooting death of Raymond Miranda.  Appellant admitting shooting Miranda twice in the torso. N.T., 3/26/14, at 6.  The trial court imposed 15 to 40 years of incarceration immediately after the guilty plea.  On February 9, 2015, Appellant filed his first PCRA petition, seeking *nunc pro tunc* restoration of his right to a direct appeal.  The PCRA court granted relief, and, on August 16, 2016, this Court affirmed the judgment of sentence, concluding Appellant entered a valid guilty plea.  Appellant filed a timely first PCRA petition on

January 13, 2017. Appointed counsel was permitted to withdraw and the PCRA court denied relief on November 4, 2017. Appellant did not appeal.

On April 24, 2020, Appellant filed the instant *pro se* petition, alleging that he was not the murderer, and that DNA testing of the victim's clothes would confirm that Appellant had no contact with the victim. Section 9543.1 permits a motion for DNA testing of evidence discovered either before or after the conviction. 42 Pa.C.S.A. § 9543.1(a)(1), (2). The motion must be made in a timely manner and seek to demonstrate the actual innocence of the person seeking the testing. 42 Pa.C.S.A. § 9543.1(a)(4), (c)(2). A prior guilty plea does not preclude a motion for DNA testing. 42 Pa.C.S.A. § 9543.1(a)(5).

> An application for DNA testing should be made in a motion, **not** in a PCRA petition. Though brought under the general rubric of the PCRA, motions for post-conviction DNA testing are clearly separate and distinct from claims brought pursuant to other sections of the PCRA. This Court has consistently held the one-year jurisdictional time bar of the PCRA does not apply to motions for DNA testing under Section 9543.1.

*Commonwealth v. Williams*, 35 A.3d 44, 50 (Pa. Super. 2011) (emphasis in original; internal citations and quotation marks omitted), *appeal denied*, 50 A.3d 121 (Pa. 2012). Because post-conviction DNA testing falls under the aegis of the PCRA, the same standard of review applies. We consider whether the PCRA court's ruling is supported by the record and free of legal error. *In re Payne*, 129 A.3d 546, 553-54 n.11 (Pa. Super. 2015) (*en banc*), *appeal denied*, 145 A.3d 167 (Pa. 2016). Section 9543.1 does not confer a right to counsel. *Id.* at 553 n.11. Here, the PCRA court found that Appellant failed to

file his motion in a timely manner. The court also found that the testing Appellant seeks would not demonstrate his innocence. We agree on both counts.

In ***Commonwealth v. Edmiston***, 65 A.3d 339 (Pa. 2013), our Supreme Court held that a motion for DNA testing was untimely where the defendant waited until his second PCRA petition to seek testing of physical evidence he had known about since his trial twenty years earlier. ***Id.*** at 357. There, the Supreme Court reasoned that a decision to seek further DNA testing at the time of his trial might have sealed his fate. ***Id.*** at 358. The Supreme Court wrote:

> [T]he statute limits post-trial testing for very salient reasons: If post-trial testing were routinely available, few would seek pre-trial testing; it would behoove counsel to go to trial without testing, then seek DNA testing if convicted, there being nothing but an up-side to a convicted client. DNA testing that is available cannot become after-discovered evidence, and cannot be treated as a second-chance lottery ticket.

***Id.*** (quoting ***Commonwealth v. Williams***, 899 A.2d 1060, 1065 n.4 (Pa. 2006).[1]

We find our Supreme Court's reasoning instructive to our disposition of Appellant's motion, which the PCRA court summarized as follows:

---

[1] In ***Commonwealth v. Small***, 238 A.3d 1267 (Pa. 2020), our Supreme Court overruled ***Edmiston*** and several other cases to the extent that they relied on a public record presumption to reject a PCRA petitioner's assertion of after discovered evidence. The public record presumption is not at issue in this case, and ***Small*** does not affect the ***Edmiston*** Court's analysis of the timeliness of a motion for DNA testing.

[Appellant] alleges that the decedent, Raymond Miranda, went to purchase drugs from an individual known as Johnny Gonzalez. [Appellant] states that the decedent did not have any money to purchase the drugs from Mr. Gonzalez and therefore, he traded some tattooing equipment 'for four bags of heroin and one bag of crack cocaine.' After the exchange, [Appellant] alleges that decedent went to an unspecified location to meet with a woman identified as Mallory Moyer. [Appellant] then alleges that decedent and Ms. Moyer both consumed the drugs that were 'purchased' from Mr. Gonzalez. At some time later, [Appellant] alleges that decedent and Ms. Moyer went to another location where they traded 'their remaining tattooing equipment for two bags of crack cocaine, which they smoked while parked in a car."

After smoking the two bags of crack cocaine, [Appellant] alleges that decedent and Ms. Moyer decided to go back to the residence of Gonzalez to rob him of additional drugs and money. While robbing Mr. Gonzalez, [Appellant] alleges that a 'grievous assault' took place where decedent broke the nose of Mr. Gonzalez, which caused 'profuse bleeding.' According to [Appellant], Mr. Gonzalez attempted to defend himself by stabbing decedent 'in the torso.' Notwithstanding being stabbed, decedent was allegedly successful in stealing drugs and money from Mr. Gonzalez.

After the decedent was stabbed, [Appellant] alleges that decedent and Ms. Moyer consumed the drugs that were stolen from Mr. Gonzalez. Petitioner then alleges that decedent and Ms. Moyer went into the home of an apparent relative of the decedent, whereupon decedent 'bandaged his stab wounds' and discarded the shirt he was wearing. At some point thereafter, [Appellant] alleges that decedent and Ms. Malloy left their location and proceeded to decedent's car. Upon arriving at the decedent's car, [Appellant] alleges that an aggrieved Mr. Gonzalez finds, shoots, and kills the decedent, Raymond Miranda.

During the subsequent police investigation, [Appellant] asserts that he was falsely identified as the shooter by Ms. Moyer and by another individual, Miquel Sepulveda—whom [Appellant] describes as a 'drug addict.' [Appellant] claims these identifications constituted 'confirmation bias.'

PCRA Court Opinion, 1/5/21, at 10-11.

*Edmiston* is instructive because there, as here, the evidence to be tested was known to the defendant at the time of trial. If Appellant believed a DNA test of the victim's clothes would have exonerated him, he could have sought the test rather than plead guilty. Yet Appellant waited until after his *nunc pro tunc* direct appeal and dismissal of his first PCRA petition until he filed the instant motion. Further, if a contemporaneous test revealed Appellant's DNA on the victim's clothing, the result would have been further evidence of his guilt. Presently, Appellant has nothing to lose from seeking a test. We agree with the PCRA court's conclusion that the instant motion, pertaining to evidence that was available to Appellant prior to his March 2014 guilty plea, was not made in a timely manner.

We also agree with the court's conclusion that Appellant has failed to demonstrate that the testing would demonstrate his innocence.

> [T]he legislature delineated a clear standard—and in fact delineated certain portions of the standard twice. Under section 9543.1(c)(3), the petitioner is required to present a *prima facie* case that the requested DNA testing, assuming it gives exculpatory results, would establish the petitioner's actual innocence of the crime. Under section 9543.1(d)(2), the court is directed not to order the testing if it determines, after review of the trial record, that there is no reasonable possibility that the testing would produce exculpatory evidence to establish petitioner's actual innocence. From the clear words and plain meaning of these provisions, there can be no mistake that the burden lies with the petitioner to make a *prima facie* case that favorable results from the requested DNA testing would establish his innocence. We note that the statute does not require petitioner to show that the DNA testing results would be favorable. However, the court is required to review not only the motion [for DNA testing], but also the trial record, and then make a determination as to whether there is a reasonable possibility that

> DNA testing would produce exculpatory evidence **that would establish petitioner's actual innocence.** We find no ambiguity in the standard established by the legislature with the words of this statute.

***Williams***, 35 A.3d at 49–50 (emphasis in original).

In his plea colloquy, Appellant admitted shooting the victim twice in the torso. N.T., 3/26/14, at 6. There is no mention of any hand-to-hand struggle between Appellant and the victim, and thus no reason to believe that Appellant's DNA would be found on the victim's clothing. A negative result would therefore do nothing to disprove Appellant's admission that he shot the victim. We discern no error in the PCRA court's conclusion that there is no reasonable probability that the requested testing would establish Appellant's actual innocence.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/5/2021